**Juan C. Chavez**, OSB #136428
**Franz H. Bruggemeier**, OSB #163533
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

      Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARK WILSON<br><br>Plaintiffs,<br>    v.<br><br>JERRY PLANTE, and JOHN DOES 1-10.<br><br>Defendants. | Case No. 6:21-cv-01606-SI<br><br><br>PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

Defendants primarily stake their defense on two arguments: 1) Plaintiff sued too early; and 2) Plaintiff sued too late. Neither are availing. Regarding the former claim, Plaintiff did in fact file for administrative relief, contrary to Defendants' assertion. He did so on September 27, 2021. Regarding the latter claim, Plaintiff is still being harmed, and will continue to be harmed even after being released from the Disciplinary Segregation Unit.

Defendants also characterize Defendant Plante's role in this matter as merely an investigatory necessity. This ignores the substance of Plaintiff's retaliation claim. Indeed, Defendants do not dispute the substance of Plaintiff's claims that Defendant Plante targeted

Plaintiff's conduct and wrote a misconduct report based on unlawful, illegitimate penological reasons.

Lastly, Defendants misconstrue the harms Plaintiff seeks to address as ones focused on solitary confinement. One day in solitary confinement is an immediate harm. Living in ODOC with an unlawful disciplinary finding is an immediate harm. Not being able to engage in legal advocacy is an immediate harm. Being transferred to another facility because of Defendants' retaliation is an immediate harm.

This Court has the ability to stop these unconstitutional actions. There is no doctrine of delay that prevents the Court from issuing a temporary restraining order. Nevertheless, the timeline of events leading to Plaintiff's motion reveals the lengths Plaintiff took to resolve his matter administratively, in compliance with the Prison Litigation Reform Act ("PLRA"), and preserve his constitutional claims.

## II. TIMELINE OF EVENTS

### A. Events Related to Claim

<u>December 4, 2020</u>: Defendants allegedly received an anonymous Kyte alleging McKinney committed misconduct. (Dkt. No. 15, ¶ 5).

<u>January 21, 2021</u>: Defendant Plante removed Plaintiff from his position as legal assistant and placed him on work restriction based on his investigation of McKinney. Plaintiff remained in incentive housing and continued to be paid as a legal assistant. (Dkt. No. 6, ¶¶ 4, 6, 7).

<u>January 21, 2021</u>: McKinney is "duty stationed" and removed from OSCI library. (Dkt. No. 7, ¶ 24).

March 23, 2021: Defendant Plante interviews plaintiff (recorded on his phone) and informs him that the only allegation against plaintiff is that McKinney helped him with suing ODOC. (Dkt. No. 6, ¶ 21).

April 15, 2021: McKinney is interrogated by Defendant Plante, following which McKinney resigns.

August 4, 2021: Defendant Plante issued plaintiff a misconduct report, concluding an 8 month investigation. (Dkt. No. 15, ¶ 10).

**B. Communication with ODOC Officials and Attorneys To Resolve Issues & Investigation of Claims**

August 8, 2021: Attorney Juan Chavez emailed ODOJ attorney Jefry Van Valkenburgh and ODOC officials Colette Petters, Jessica Freeburn, Joshua Highberger, and Craig Prins, with a letter to the same identifying various violations with plaintiff's disciplinary hearing and the retaliation. (Dkt. No. 16 at 5, 7).

August 11, 2021: Attorney Juan Chavez emailed ODOJ attorney Jef Vanvalkenburgh and ODOC officials Colette Petters, Jessica Freeburn, Joshua Highberger, and Craig Prins, stating that he had been informed that Mr. Wilson had a disciplinary hearing that did not comply with due process. (Dkt. No. 16 at 9).

August 11, 2021: ODOJ attorney Matthew J. Lysne informed Juan Chavez that his August 11, 2021 email had been forward to Mr. Lysne, that communication should be directed through him on the matter, and he would confer with ODOC officials regarding the status of plaintiff's misconduct hearing. (Dkt. No. 16 at 9).

August 12, 2021: ODOJ attorney Matthew J. Lysne emailed Juan Chavez to inform him that "the hearings officer conducting Mr. Wilson's disciplinary hearing postponed the hearing to allow

time to consider several requests Mr. Wilson had submitted, including a request for investigation, and a submitted list of questions for potential witnesses." (Dkt. No. 16 at 11).

August 31, 2021: Disciplinary hearing is conducted and plaintiff is found guilty of misconduct and placed in segregation for 120 days. Plaintiff's requests regarding investigation and witnesses were denied. (Dkt. No. 17, ¶ 6).

September 7, 2021: Plaintiff filed a grievance against Plante for retaliation. (Dkt. No. 1, ¶ 61).

September 14, 2021: OSCI grievance coordinator rejected Plaintiff's grievance on ground that an AIC may not file grievance for misconduct, investigations related to misconduct, disciplinary hearings, findings or sanctions. (Dkt. No. 1, ¶ 62)

September 15, 2021: Final Order regarding disciplinary hearing was issued to plaintiff. (Dkt. No. 17 at 8).

September 16, 2021: Plaintiff notified attorneys Chavez and Yoshimoto of final order via scheduled legal call.

September 17, 2021: OJRC paralegal begins initial inquiry into securing a copy the final order.

September 21, 2021: Bobbin Singh, Executive Director of OJRC, made initial request to ODOC for the Final Order regarding the disciplinary report dated September 15, 2021. (Dkt. No. 16 at 35).

September 23, 2021: Shelley Clayton, ODOC Legal Information Officer, provided Bobbin Singh a copy of the Final Order responsive to his September 22, 2021, request. (Dkt. No. 16 at 35)

September 27, 2021: Plaintiff submitted a Petition for Administrative Review of the Final Order. (Dkt. No. 6, ¶ 47).

September 29, 2021: Plaintiff's attorneys Juan Chavez and Julia Yoshimoto submitted a request via email and attached letter to ODOC officials Rob Persson, Assistant Director of Operations,

and Craig Prins, Inspector General to vacate final disciplinary order pursuant to OAR 291-105-0100 to vacate final disciplinary order. (Dkt. No. 16 at 41-68). The email requested affirmation of receipt of the email and letter. (Dkt. No. 16, ¶ 6).

September 29, 2021: Attorney Chavez emailed DOJ attorneys Matthew Lysne and Shannon Vincent draft complaint and request to vacate final order. (Dkt. No. 16, ¶ 6).

September 29, 2021: DOJ attorney Shannon Vincent acknowledges receipt of complaint, informs Chavez that "ODOC is going to stand by its decision in Mr. Wilson's prison disciplinary case" and that she will handle the lawsuit. (Dkt. No. 16 at 69).

October 1, 2021: Attorneys Chavez and Yoshimoto sent a follow-up email to ODOC officials Persson and Prins again requesting affirmation of receipt of email and letter sent on 9/29 regarding the request to vacate the final disciplinary order. Attorneys Chavez and Yoshimoto concluded the email by stating "If you do not respond by 5:00 pm today (10/01/21), we will consider your non-response a denial of our request." (*Yoshimoto Dec.*, ¶ 5).

October 4, 2021: Craig Prins, ODOC Inspector General, informed attorneys Julia Yoshimoto and Juan Chavez that they have received the request to vacate the Final Order and that they are reviewing the request. (*Yoshimoto Dec.,* ¶ 6).

October 4, 2021: DOJ attorney Shannon Vincent informs attorney Juan Chavez's that she "ODOC is reviewing the request [to vacate the Final Order" in accordance with [OAR] 291-105-0100, but [she does] not know what ODOC's decision will be at this time as the matter is still under review."

October 18, 2021: Declarations from AICs are sent to attorney Juan Chavez. (Dkt. Nos. 8-10).

October 22, 2021: McKinney declaration secured. (Dkt. No. 7).

**C. Civil Action**

October 28, 2021: Craig Prins, ODOC Inspector General, denied attorney Juan Chavez's and Julia Yoshimoto's request to vacate the Final Order. (*Yoshimoto Dec.*, ¶ 7).

Neither attorney was notified by email or other communications of the denial. (*Yoshimoto Dec.*, ¶8)

November 4, 2021: Civil Rights Complaint filed. (Dkt. No. 1).

November 17, 2021:   Plaintiff received letter from Craig Prins, ODOC Inspector General, informing him that his request to vacate his disciplinary order is denied.

November 22, 2021: TRO filed (Dkt. No. 3).

### III. ARGUMENT

**A. Summary of Plaintiff's Reply**

Defendant argues against the TRO for four reasons: (1) plaintiff is not likely to succeed on the merits of his claims; (2) plaintiff cannot show that he will suffer irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities tips in Inspector Plante's favor; and (4) an injunction will not serve the public interest. But these are unavailing arguments.

Defendants do not refute the base allegations made by Plaintiff: that Defendants retaliated against him because of protected conduct. Instead, they broadly claim that there was a legitimate penological purpose to *investigating* staff misconduct. But that is not all what Defendant Plante did. He purposefully investigated and wrote a misconduct report based entirely on the premise that engaging in protected conduct Plaintiff had violated ODOC administrative rules. That is inapposite to the Constitution and the protections under the First Amendment. Plaintiff has clearly met his burden of showing likelihood of success, as Defendants do not refute this retaliatory nexus.

This is perhaps why instead of engaging on the merits of Plaintiff's retaliation claim, Defendants instead focus on the timeliness of the motion. Plaintiff will address that point first, then again highlight the protected conduct at stake in his case.

**B. This is a Timely Motion**

One could break down Defendants' timing argument into two camps: the "too early" arguments and the "too late" arguments. The Too Early category speaks to the administrative exhaustion component of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The Too Late category speaks, in some part, to the "balance of equities" and "irreparable harm" components of the preliminary injunction standard. *Winters v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008). Plaintiff will address each.

    1. "Plaintiff is Too Early"

As briefed in his motion, Plaintiff explained that the PLRA requires exhaustion of all *available* administrative remedies. 42 U.S.C. § 1997e(a); *see Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004). Defendants claim that Plaintiff has not done so. But he did.

A prisoner's failure to exhaust administrative remedies under the Prisoner Litigation Reform Act (PLRA) "is an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 US 199, 204, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed. *Albina v. Baca*, 747 F.3d 1162, 1171 (2014). The Ninth Circuit held in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004), that "the statutory language [of 42 USC §1997e] does not require exhaustion when *no* pertinent relief can be obtained through the internal process." *Id.* at 935 (emphasis in original). "The obligation to exhaust 'available' remedies persists as long as

*some* remedy remains 'available.'" *Id.* (emphasis in original). Accordingly, and because failure to exhaust is an affirmative defense, "a defendant must demonstrate that pertinent relief remained available." *Id.* at 936-37. Further, "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

On September 27, 2021, Plaintiff filed for administrative review of his disciplinary sanction to Inspector General Prins pursuant to OAR 291-105-0085(3). The Inspector General had 60 days to respond to his request for review. OAR 291-105-0085(10). He mailed it to the Inspector General, and to his counsels. *Yoshimoto Dec.* ¶ Ex. 4. His counsels sent a separate letter to Inspector General Prins on or about September 29, 2021, as referenced in *Nofziger Dec.* ¶ 15, Def. Exhibit 3. That letter gives detailed explanations why Defendants' misconduct findings against Plaintiff do not pass muster.

After sending the September 29, 2021 petition to Inspector General Prins, Plaintiff's counsels forwarded the letter, as well as the Complaint, to Defendants' Counsels, as referenced in Mr. Lysne's Declaration. Dkt. No. 16, ¶ 6. Shortly after transmission, Defendants' Counsel emailed to say that "ODOC is going to stand by its decision in Mr. Wilson's prison disciplinary case." To Plaintiff, that appeared to be an unequivocal denial of the request for administrative review. Nevertheless, Plaintiff waited for a response from Inspector General Prins to give himself the best opportunity to litigate this matter in accordance with the PLRA, all the while suffering in solitary confinement.

Plaintiff's counsels sought an update on the administrative review on or about October 1, 2021. Inspector General Prins stated that he was reviewing the request on October 4, 2021. Counsel for Defendants informed Plaintiff's counsel that ODOC was reviewing the matter also

on October 4, 2021. Plaintiff did not receive a response from Inspector General Prins until November 17, 2021, in an envelope that did not appear to have gone through the mail room. The response stated that Inspector General Prins made this decision on or about October 28, 2021. Plaintiff's Counsel never received a response—they only heard about the response during a scheduled phone call with Plaintiff on or around November 17, 2021. The response does not reference the petitioner submitted by Plaintiff, *Yoshimoto Dec.*, ¶ 7, Ex. 4, only referencing the letter sent by Counsel. As of the filing of this brief, Plaintiff has not received a response from Inspector General Prins within the 60 day window announced in OAR 291-105-0085(10). Further, Plaintiff could not inquire into the status of this petition for review if he wanted to until November 29, 2021, as "[r]equests for updates during the 60-day period will not receive a response." *Id.*

Not that Plaintiff needed to do so. Defendants' own counsel told Plaintiff's counsels that ODOC would not be changing course as of September 29, 2021. Even if that is insufficient proof to quash administrative review, Defendants' October 28, 2021 letter is. Plaintiff had no further reason to believe that he had any administrative options left to exhaust. The Prins letter shows that he had considered the same relief that Plaintiff had raised in his petition, and that it was being denied. Lastly, as stated in Plaintiff's Motion, an AIC cannot grieve misconduct reports or the investigations leading to misconduct reports—*i.e.*, Defendant Plante's conduct. OAR 291-109-0210(4); *see* Dkt. 3, at p. 33. Therefore, Plaintiff fulfilled his obligation to administratively exhaust his remedies, as "no pertinent relief" is available. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004).

///

///

2. "Plaintiff is Too Late"

Plaintiff is certainly suffering in solitary confinement at the time of this filing. Any day in solitary confinement is an "irreparable injury." *Evans v. Oregon State Penitentiary, Corrections Div.*, 87 Or. App. 514, 538 (1987) ("If an inmate has been removed from the general prison population and placed in disciplinary segregation, that will constitute a *prima facie* showing of irreparable injury [under ORS 421.195][1].") But he will continue to suffer so long as Defendants' continue to maintain that he had violated ODOC disciplinary rules for engaging in protected conduct.

Plaintiff wishes he could have brought this Motion sooner. But as detailed above, Defendants investigated this matter for eight months, delayed review for as long as they could, and did not allow him to exhaust his remedies definitively until November 17, 2021. Plaintiff could not even ask for the status of his request until then. OAR 291-105-0085(10). Plaintiff filed his Motion for Temporary Restraining Order 7 days later. This was, simply, the earliest Plaintiff could file his Motion.

a. Irreparable Injury

Defendants claim that Plaintiff's timing for filing this Motion demonstrates a lack of "irreparable injury." Defendants' argument is premised on Plaintiff "only" having approximately 23 days left in solitary confinement—a form of torture—at the time of the parties' hearing before the Court regarding this Motion. But as Plaintiff described in his Motion, the injury to Plaintiff is not just segregation. It is the harm caused by the chilling Plaintiff's protected rights, and subsequent loss of privileges and other housing rights, because of Defendant Plante's retaliatory

---

[1] Oregon had previously granted judicial review of ODOC disciplinary hearings. *Formerly* ORS 421.195. Oregon repealed this right to review in 1995. Or. Laws Ch. 108, § 5 (1995).

Misconduct Report. Because of this, Plaintiff will be irreparably harmed by the 23 additional days in solitary confinement, the loss of privileges, the likely transfer to harsher facilities, the disruption of his daily life, and, crucially, his ability to assist other prisoners in their legal actions.

As described in *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997), "the injury asserted is the retaliatory accusation's chilling effect on [plaintiff's] First Amendment rights, not the additional confinement or the deprivation of the television." The chilling effect in this case is against Plaintiff's ability to be an advocate for other prisoners, to pursue his own litigation, and as an inmate legal assistant. The punishment he received from ODOC was intended to silence him. Defendant Plante's Misconduct Report will outlast Plaintiff's time in solitary confinement.

But Plaintiff cannot discount the effect that remaining in solitary confinement will have on him. He has already briefed the effects solitary confinement has had on him since entering OSCI's Disciplinary Segregation Unit on August 31, 2021. He also provided declarations from other people being held in OSCI's DSU. Plaintiff also detailed his fear of being transferred.

Defendants' cite two cases that suggest that undue delay in bringing a motion for equitable relief would weigh against a claim of "irreparable injury," *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) and *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). But neither case involved a plaintiff presently suffering from a continuous unconstitutional act. The *Oakland Tribune* case concerned an unlawful trade practice claim where the harm involved contracts that harmed the plaintiff's bottom-line as a news publisher. 762 F.2d at 1375-1376 (9th Cir. 1985). There, delay would critically change the claim being asserted. Likewise, *Lydo Enterprises, Inc.* involved a motion for injunctive brought five years after the zoning ordinance at issue passed. 745 F.2d. at 1213

(9th Cir. 1984). Both cases note the "unexplained" nature of the delay. No similar delay occurred here. Plaintiff has explained himself.

As detailed above, *see* § III.B.1, Plaintiff brought this motion as quickly as he could. If anything, any undue delay in bringing this motion could be attributed to Defendants delaying review of Plaintiff's requested relief and the rigors of passing muster under the PLRA. Fundamentally, Plaintiff will suffer irreparable injury by being forced to sit in solitary confinement for more time than is lawful, and in likely suffering the attendant effects of having a misconduct report on his record once released from DSU.

b. Balance of Interests

Again, Defendants claim that Plaintiff "unreasonabl[y] delayed" bringing this motion, and that should weigh against him in the "balance of interests." Dkt. 13, at p. 17, *citing Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). This assumes that both the delay was unreasonable, and that such a delay entirely subsumes Plaintiff's retaliation claim. Plaintiff need not reiterate his obligations to administratively exhaust his remedies, as Defendants claim he should have. Instead, he would like to highlight the lengths Plaintiff took to mitigate the harm caused by Defendants by trying to persuade them to cease what was shaping up to be an unconstitutional action.

As detailed in Plaintiff's "Timeline of Events," *see* § II, Plaintiff could not contact counsel about the result of his late-August disciplinary review hearing until September 16, 2021, as he was in solitary confinement. Once Plaintiff's counsels were notified, they immediately set about learning as much about the factual underpinnings of the claims made against Plaintiff. They sought public records. They also drafted a lengthy administrative review petition, as documented in Defendants' Exhibits. Each of those arguments required legal analysis and

vetting. Meanwhile, Plaintiff began his own process of seeking administrative review. Plaintiff's counsels sent emails to Defendants' counsels and spoke on the phone. Defendants claim that this process was done for a legitimate penological purpose, *discussed further infra* § III.C., but Plaintiff was not able to do an independent investigation—much less present witness testimony to the hearings officer, contrary to the Nofziger Declaration, ¶ 5, and the very exhibit he provided, Def. Ex. 1, p. 1 ("AIC's request for witness(es) was denied")—so he needed his counsels to do their own investigation with their own due diligence.

Defendants' claim that Plaintiff could have received judicial review earlier than now are dispelled by their opposition brief to Plaintiff's motion. Dkt. 13, at p. 17. While Plaintiff would like to imagine that Defendants would have waived their inevitable objections under the PLRA, they did not—even now, at Day 93 of Plaintiff's time in solitary confinement. As argued above, this is as early this motion could have been filed. And because of the fundamental right at stake—the freedoms associated with prisoners holding their prison accountable in the courts— little should sway the balance of equities in the favor of Plaintiff's abusers. Especially when Defendants do not refute that Defendant Plante engaged in acts meant to chill a prison law library assistant from engaging in protected activities, as argued next.

## C. Defendant Plante Retaliated Against Plaintiff

Defendant Plante spends little time denying Plaintiff's version of events, or even McKinney's retelling of the interaction. Indeed, it is because Defendant Plante did:

- Focus the ire of his investigation on Plaintiff's protected conduct;

- Review attorney work product;

- Remove Plaintiff from working in the law library;

- Restrict Plaintiff from assisting others in legal advocacy;

- Bully McKinney into "confessing";

- Not include evidence that McKinney authorized Plaintiff to take the alleged violative actions detailed, nor that Plaintiff was acting within the realms of long-standing ODOC law library practices, *see also* Declaration of James Wantz;

- Write a Misconduct Report that charged Plaintiff based on his protected conducted; and

- Punish Plaintiff on the basis of his protected conduct, as is the natural consequences of his actions.

Defendants attempt to frame Defendant Plante's merely an investigative one, and only into a narrow subject of a staff being "compromised." In his declaration, Defendant Plante cites primarily reasons to investigate McKinney, *Plante Dec.* ¶ 6, and just one reason to investigate Plaintiff. That reason, again, was related to protected conduct. There is no evidence that Defendant Plante disciplined anyone for using the telephone his informant claims McKinney brought into the law library.[2] Indeed, of the reasons to initiate his investigation, only the one against Plaintiff was pursued, and pursue he did for eight months. Despite Defendant Plante's claims that others in the law library were receiving "favors" from McKinney, only Plaintiff was punished. The conduct related to jump drives with pictures and music did not get any other law librarian in trouble with Defendant Plante. The printing fees claim did not get result in anyone but Plaintiff getting in trouble.

To underline this point, Plaintiff brought a cognizable and well-settled § 1983 claim. *See Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997) (retaliation claim for correction officer falsely accusing prisoner of violating prison rule in retaliation for exercise of constitutional right);

---

[2] McKinney refutes the claim that she allowed AICs to personally send or receive emails, or place phone calls. Dkt. 7, *McKinney Dec.* ¶ 22.

*Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (allegation that officers filed false

disciplinary complaint and made false statements in retaliation for filing grievances stated a

claim); *Bernal v. Beard*, No. 2:16-CV-2511 AC P, 2018 WL 3428575, at *3 (E.D. Cal. July 16,

2018) ("Inmates have a right to be free from the filing of false disciplinary charges in retaliation

for the exercise of constitutionally protected rights.")

       Despite being given an opportunity to do so, Defendant Plante does not dispute that he

fabricated evidence and filed the false misconduct report in response to Plaintiff's protected

conduct. Defendant Plante does not dispute McKinney's sworn testimony in her declaration that

she was intimidated by him to agree she was compromised for not reading plaintiff's outgoing

legal mail.[3] He does not dispute that McKinney's sworn statement that she did not "gift" a toy

phone to plaintiff and that it belong to her. *McKinney Dec.* ¶ 11. Defendant Plante does not

dispute McKinney's sworn statement that she authorized all communication with AICs from

outside persons or that plaintiff "never behaved inappropriately throughout [her] time working

with him." *Id.* at ¶ 22. Lastly, Defendant Plante does not dispute that he read plaintiff's protected

legal document. *Id.* at ¶ 39.

       Plaintiff was targeted by Defendant Plante because he was an effective advocate, and did

his job well. As Attorney Katharine Edwards details, "Wilson guided my client on the overall

processes of filing grievances, and helped create the necessary documentation for our tort claim

notice." *Edwards Dec.* ¶ 8. Attorney Edwards' client had been working on a Prison Rape

---

[3] *See* McKinney Decl., ¶ 14 ("Mr. Plante told me that by emailing documents and not 'reading
them', I had broken policy, and that AIC Wilson had 'compromised' me. I told him that staff are
not supposed to read legal mail and he appeared not to care. When Mr. Plante told me that I was
compromised, exhausted I felt pressured to say that AIC Wilson had compromised me. I did not
feel prior to the interview that I had been compromised, and I do not feel now that I had mixed
feelings or was confused in my supervisor role over AIC Wilson.")

Elimination Act ("PREA")-related case. *Id.* at ¶ 7. Attorney Edwards' client had sued ODOC/OSCI before, and would likely be suing ODOC again over the PREA matter. *Id.* Attorney Edwards' privileged documents about these plans to sue ODOC were among the ones reviewed by Defendant Plante. *Id.* at ¶ 14. Distressingly, following this, Attorney Edwards' client also faced retaliatory disciplinary findings in April 2021 and October 12, 2021. *Id.* at ¶ 11 – 12. The April 2021 retaliatory discipline coincides with when Defendant Plante reviewed Plaintiff and McKinney's files. These courses of actions have even chilled Attorney Edwards from referring clients to utilize the OSCI Law Library. *Id.* at ¶ 16 - 17.

As detailed in the Declarations of attorneys Katharine Edwards and Jason E. Thompson and former law library work James Wantz, Plaintiff was following long-standing practices of the OSCI Law Library and did engage in untoward conduct. Attorney Thompson only sent messages to McKinney. *Thompson Dec.* ¶ 6. Attorney Thompson even represented Plaintiff and would still only communicate to him through McKinney. *Id.* at ¶ 8.

While Defendants try to constrict the analysis of Defendant Plante's actions to just the investigation, Defendant Plante's actions—even in just the investigatory capacity—constitute unlawful retaliation for protected conduct, which is actionable and restrainable. But Plaintiff can go further and request this Court to compel Defendants to rescind their misconduct report made against Plaintiff, because that is what triggered the disciplinary findings made against him, placing him in solitary confinement. No amount of deference to prison officials can wipe clean Defendant Plante's retaliatory conduct. It lacks legitimate penological purpose. As discussed next, Defendant Plante's conduct is remediable at this juncture, because it is not only his actions during the investigation that caused Plaintiff's injury, but the ongoing stain he created by writing the baseless Misconduct Report he submitted.

**D. Plaintiff's Proposed Remedy Is As Narrowly Drawn As Can Be To Correct This Violation Of Federal Law.**

The Prison Litigation Reform Act placed a "limit" on the expanse of injunctive relief an incarcerated person can seek and receive from the Federal courts.[4] 18 U.S. Code § 3626(a)(1)(A) provides:

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

Even given this restriction, the scope of the harm suffered by Plaintiff should overcome any concern that the remedies sought by them are too broad. Indeed, Plaintiffs' request is simple: compel Defendant Plante to rescind his misconduct report. Plaintiff cannot be punished for protected conduct, and Defendant Plante caused Plaintiff to be punished because of his misconduct report. If the scope of the retaliation includes the misconduct report, then the Court could "narrowly draw[]" the relief to removing the misconduct report.

Defendants cannot broadly claim a right to violate the Constitution just because they claim it impacts "public safety." As briefed previously, the court "need not defer to prison officials where the plaintiff produces substantial evidence showing that the jail's policy or practice is an unnecessary, unjustified, or exaggerated response to the need for prison security." *Id.*, citing *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318,

---

[4] Plaintiffs raise here and wish to preserve the opportunity to argue that this restriction on the traditionally broad authority of the Federal courts to grant equitable remedies as both a violation of Plaintiffs' due process rights, and is violative of the separation of powers.

322–23 (2012); *Brown v. Plata*, 563 U.S. 493, 511 (2011); *Whitley v. Albers*, 475 U.S. 312, 322 (1986) (stating that deference to prison officials "does not insulate from review actions taken in bad faith and for no legitimate purpose"); *Spain v. Procunier*, 600 F.2d 189, 194 (9th Cir. 1979) ("Mechanical deference to the findings of state prison officials in the context of the eighth amendment would reduce that provision to a nullity in precisely the context where it is most necessary.").

Defendants will not be injured because they cannot maintain unlawful misconduct reports. As the Ninth Circuit found in *Shorter v. Baca*, 895 F.3d 1176, 1191 (9th Cir. 2018), "we understand that, while courts 'unquestionably should be reluctant to second-guess prison administrators'…' the judicial system has a role in safeguarding inmates from serious civil rights abuses… Otherwise, "careless invocations of 'deference' run the risk of returning us to the passivity of several decades ago, when the then-prevailing barbarism and squalor of many prisons were met with a judicial blind eye and a 'hands off' approach." (Internal citations omitted.) So here too, this Court must safeguard Plaintiff's rights, and not allow Defendants the opportunity to chill prisoners from accessing the courts.

## IV. CONCLUSION

Plaintiff requests that this Court grant the relief sought in his Motion for Temporary Restraining Order.

DATED: December 2, 2021.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Franz H. Bruggemeier, #163533

Attorneys for Plaintiff
