IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK WILSON,

           Plaintiff,

    v.

JERRY PLANTE and JOHN DOES 1-10,

           Defendants.

Case No. 6:21-cv-1606-SI

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

Juan C. Chavez and Franz Bruggemeir, OREGON JUSTICE RESOURCE CENTER, PO Box 5248, Portland, OR 97208. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Oregon Attorney General; Shannon Vincent and Kenneth C. Crowley, Senior Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendant Jerry Plante.

**Michael H. Simon, District Judge.**

      In this lawsuit, Plaintiff Mark Wilson (Wilson), a state prisoner, sues Jerry Plante

(Plante), an Inspector with the Oregon Department of Corrections (ODOC), and John Does 1-10,

employees of ODOC involved in the investigation and discipline of Wilson (collectively,

Defendants). Against all Defendants, Wilson asserts retaliation claims under the First and Fourteenth Amendments to the United States Constitution. Wilson alleges that Defendants retaliated against Wilson for his protected conduct as an inmate legal assistant and prisoner advocate and his efforts to access the courts in his own case. Based on a misconduct report prepared by Plante, Wilson was subjected to a disciplinary hearing. The hearings officer found Wilson guilty of several charges and, among other sanctions, placed Wilson in disciplinary segregation for 120 days. Before the Court is Wilson's motion for Temporary Restraining Order (TRO). Wilson requests that the Court provide preliminary injunctive relief by reversing the disciplinary findings, releasing Wilson from disciplinary segregation, placing Wilson back into incentive housing, and ordering Defendants not to further retaliate against Wilson. For the following reasons, the Court DENIES Wilson's motion for TRO.

## STANDARDS

In deciding whether to grant a motion for TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that a mere "possibility" of irreparable harm, rather than its likelihood, was sometimes sufficient to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In addition, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[1] Thus, the application of the relevant factors may differ, depending on whether the court is considering a TRO or a preliminary injunction.[2] Indeed, the two factors most likely to be affected by whether the motion at issue is for a TRO or a preliminary injunction are the balancing of the equities among the parties and the public interest. Further, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."

---

[1] The duration of a TRO issued *without* notice may not exceed 14 days but may be extended by a court once for an additional 14 days for good cause, provided that the reasons for the extension are entered in the record. Fed. R. Civ. P. 65(b)(2). When a TRO is issued with notice and after a hearing, however, the 14-day limit for a TRO issued without notice does not apply. *See Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 n.1 (D. Or. 2016). Nevertheless, absent consent of the parties, "[a] court may not extend a 'TRO' indefinitely, even upon notice and a hearing." *Id.* Accordingly, unless the parties agree otherwise, a court should schedule a preliminary injunction hearing to occur not later than 28 days after the date that the court first issues a TRO.

[2] A preliminary injunction also is of limited duration because it may not extend beyond the life of the lawsuit. That is the role of a permanent injunction, which a court may enter as part of a final judgment, when appropriate. A preliminary injunction, however, may last for months, if not years, while the lawsuit progresses toward its conclusion. *See Pac. Kidney*, 156 F. Supp. 3d at 1222 n.2.

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

The already high standard for granting a preliminary injunction is further heightened when the type of injunction sought is a "mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that the burden is "doubly demanding" for a mandatory injunction). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). As explained by the Ninth Circuit:

> A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). A mandatory injunction orders a responsible party to take action. A mandatory injunction goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.
>
> The *status quo ante litem* referenced in *Chalk* means the last, uncontested status which preceded the pending controversy.

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (quotation marks and citation omitted) (alterations in original).

Additionally, in cases brought by prisoners involving conditions of confinement, the Prison Litigation Reform Act (PLRA) governs the breadth of injunctive relief. The PLRA provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless

> the court finds that such relief is narrowly drawn, extends no
> further than necessary to correct the violation of the Federal right,
> and is the least intrusive means necessary to correct the violation
> of the Federal right. The court shall give substantial weight to any
> adverse impact on public safety or the operation of a criminal
> justice system caused by the relief.

18 U.S.C. § 3626(a). An "injunction employs the least intrusive means necessary when it heels close to the identified violation, and is not overly intrusive and unworkable and would not require for its enforcement the continuous supervision by the federal court over the conduct of state officers." *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004) (simplified).

## BACKGROUND[3]

Wilson is a state prisoner and an "adult in custody" (AIC) within ODOC. Plante is an employee of ODOC. Wilson has been incarcerated for more than 30 years within ODOC and is a well-known prisoner's rights advocate who writes regularly for Prison Legal News, participates in legislative matters involving prisons and prisoners, and assists other AICs with their cases. Since February 2012, Wilson has worked as an AIC legal assistant in ODOC, working both on his own case and cases of other prisoners. Most recently, he was supervised by library coordinator Pam McKinney (McKinney). At all material times, McKinney was an ODOC employee. Library coordinators are responsible for supervising facility legal libraries and providing law library services to inmates.

As an AIC legal assistant, Wilson had duties that included assisting other AICs by drafting motions, affidavits, legal memoranda, petitions, complaints, letters, appellate briefs, administrative review requests, and prison grievances. On one occasion, McKinney placed a fake plastic child's toy telephone on Wilson's work desk as a joke, because of the number of calls

---

[3] For purposes of the pending motion for TRO, the Court finds the facts stated below by a preponderance of the evidence.

Wilson received from attorneys. McKinney Decl., at ¶ 11 (ECF 7). McKinney states that she did

so "in jest" as part of the new philosophy adopted by ODOC called "the Oregon way"—a shift in

culture to normalize prison conditions. *Id.* at ¶¶ 5, 11. McKinney further states that she did not

give the toy phone to McKinney, but that it stayed in the library and remained in her possession.

*Id.* at ¶ 11.

When the COVID-19 pandemic began in 2020, AICs with ongoing legal cases

encountered numerous logistical issues, including difficulties communicating with their attorneys

and handling matters through the mail. *Id.* at ¶¶ 18-19. The courts, parole board, and attorneys

emailed McKinney documents to give to AICs. *Id.* at ¶ 18. McKinney noted at the time that

outgoing legal documents got lost or arrived late, and that sensitive items missed deadlines. *Id.*

at ¶ 19. McKinney states that it was difficult getting legal documents to the Department of

Administrative Services (DAS), and she informed her supervisor of this fact. *Id.* at ¶ 20.

McKinney's supervisor spoke to Wilson and McKinney, and authorized McKinney to send legal

documents on behalf of AICs via email to the DAS. *Id.* McKinney was not informed that this

exception was limited only to DAS and did not understand this accommodation to be limited

only to legal documents being sent to DAS. *Id.* Thus, she would allow Wilson to give her other

legal documents, and she sent those documents via email during the pandemic, inspecting, but

not reading, them. *Id.* at ¶ 21.

McKinney did not allow Wilson or any other AIC personally to send or receive email or

telephone calls. *Id.* at ¶ 22. Any communication between an AIC and an outside person that

occurred was authorized and "set up" by McKinney. *Id.* at ¶¶ 22-23. McKinney believed that her

"main priority was to find a way to make legal access and process happen for the AICs." *Id.* at

¶ 13. She added that Wilson "did not push me or manipulate me to get me to email legal

documents" but that she was the one who "was finding a way to fix [the mail delivery] problem and complete my duties as they had been described to me." *Id.* at ¶ 30. She contends that other ODOC institutions handled the problems during the pandemic in a similar fashion and that when she raised the issues with her supervisor she was told to "go ahead." *Id.* She does not believe Wilson tried to take advantage of the difficulties created by the pandemic. *Id.* at ¶ 31.

On December 4, 2020, the Oregon State Correctional Institution (OSCI) received an anonymous communication alleging that McKinney had engaged in misconduct, including bringing her cell phone into a secured perimeter, giving library workers special privileges, using her cell phone to pass messages between offenders on parole and AICs, and using her ODOC email for Plaintiff. Plante Decl., at ¶¶ 5-6 (ECF 15). Plante conducted an investigation into these allegations. *Id.* at ¶¶ 7-8. On January 19, 2021, Plante searched Wilson's work area and found the toy phone that McKinney had placed on Wilson's desk. *Id.* at Ex. 1 (ECF 15, at 4). That same day, Captain John Hyde told Wilson to stay out of the law library and stop working as a legal assistant because he was under investigation. Wilson Supp. Decl. ¶ 4 (ECF 6, at 1). On January 21, 2021, Plante and Captain Hyde took Wilson aside and Plante informed Wilson that he could enter the law library to work on his own cases, but could not assist others. *Id.* at ¶¶ 5-6. Plante assured Wilson that the investigation would be completed quickly and would not take "months and months" and that Plante knew what Wilson did and had seen what Wilson "had going on." *Id.* at ¶ 8. Wilson was unable to assist any other inmates from January 2021 through August 4, 2021, during the pendency of Plante's investigation.

On or about January 24, 2021, Plante and Captain Hyde seized thumb drives from Wilson's work area in the law library. On or about March 4, 2021, Wilson saw Plante and asked about the status of the investigation. *Id.* at ¶ 16. Plante stated that he was not yet ready to

interview Wilson. *Id.* On March 23, 2021, Plante interviewed Wilson. During the interview, Plante indicated that an anonymous communication from a prisoner about McKinney started the investigation, and that the only allegation involving Wilson was that McKinney was helping Wilson sue ODOC. *Id.* at ¶¶ 20-21. Plante also confronted Wilson about the legal documents that McKinney had emailed for Wilson. *Id.* at ¶ 23. Wilson notes that Plante did not acknowledge the many other ODOC employees and supervisors copied on many of the emails who never contemporaneously objected; the fact that McKinney sent similar emails for several other prisoners, including other legal assistants, prison library clerks, and library patrons; or the fact that the emails were sent not only for Wilson's cases but also for cases of other AICs on which Wilson was assisting. *Id.* at ¶¶ 23-27.

On or about April 15, 2021, Plante interviewed McKinney. Compl. ¶ 41; Nofzinger Decl. Ex. 3, at 2 (ECF 17, at 40). McKinney characterizes this interview as an "interrogation" and describes that Plante "intimidated," "browbeat," and "pressured" McKinney, which she believed was intended to force a particular "narrative" against Wilson desired by Plante. McKinney Decl. at ¶¶ 27-33. McKinney explains that Plante would describe a situation and then conclude that McKinney had been compromised or had broken a rule and she felt forced to agree, particularly when her union representative explained that she was at risk of losing half her pension. *Id.* She tried to explain to Plante that in practice rules were not always followed to the letter and that she did not believe she had been compromised, but eventually, feeling "exhausted" and after being informed that by failing to read Wilson's outgoing legal mail she had broken policy and was compromised by Wilson, she agreed that she had been compromised, despite not feeling like she had been compromised at any time before the interrogation or at the time of writing her declaration. *Id.* at ¶ 29.

McKinney resigned on April 15, 2021. There is no record evidence about any further investigation or activity taken by Plante after that date. More than three months later, on August 4, 2021, Plante finally issued his misconduct report. In that report, Plante recommended charging Wilson with violating four rules: (1) Rule 4.15, Compromising an Employee; (2) Rule 1.11 Contraband II; (3) Rule 1.25, Unauthorized Use of Information Systems I; and (4) Rule 4.01 Disobedience of an Order 1. Plante Decl. ¶ 10. Plante's recommendation relies heavily on Wilson's testimony from March 23, 2021, McKinney's testimony from April 15, 2021, and the evidence obtained before those interviews (primarily the toy phone, emails sent by McKinney, and thumb drives). This is despite the requirement in Rule 291-105-0021(2) of the Oregon Administrative Rules (OAR) that an ODOC employee must file a misconduct report "no later than 24 hours after sufficient evidence or information is gathered, discovered, or observed to support a rule violation." Plante does not refer in his misconduct report to any evidence obtained or interviews that took place after April 15, 2021.

On August 8, 2021, Wilson's attorney Juan Chavez (Chavez) sent a letter to representatives of ODOC, alleging that ODOC had violated Wilson's constitutional rights by initiating disciplinary proceedings and requesting that ODOC "cease this unconstitutional practice immediately." Lysne Decl., ¶ 2 and Ex. 1 (ECF 16, at 2, 5). On August 9, 2021, ODOC Hearings Officer (HO) Ronnie Foss opened a prison disciplinary hearing arising from Plante's misconduct report. Nofzinger Decl., ¶ 4 (ECF 17, at 2).

On August 11, 2021, Chavez emailed ODOC officials and an Oregon Department of Justice (ODOJ) attorney, asserting that ODOC conducted Wilson's disciplinary hearing without proper constitutional protections. Lysne Decl. Ex. 2 (ECF 16, at 9). An ODOJ attorney responded that "the hearings officer conducting Mr. Wilson's disciplinary hearing postponed the

hearing to allow time to consider several requests Mr. Wilson had submitted, including a request

for investigation, and a submitted list of questions for potential witnesses." *Id.* (ECF 16, at 11).

On August 31, 2021, Wilson's disciplinary hearing was reconvened.

At the August 31, 2021, disciplinary hearing, HO Foss found Wilson guilty of violating:

(1) Rule 4.15, Compromising an Employee; (2) Rule 1.11 Contraband II; and (3) the lesser

included offense of violating Rule 1.26, Unauthorized Use of Information Systems II. Nofzinger

Decl., ¶ 8 and Ex. 1 (ECF 17, at 2, 7). HO Foss did not find Wilson guilty of the fourth violation

identified by Plante. For Compromising an Employee, HO Foss found by a preponderance of the

evidence that Wilson "engaged in a personal relationship with McKinney by accepting items that

were not authorized such as a plastic child's toy phone, photographs from a former AIC, a video

of a former AIC, two thumb drives, and having Ms. McKinney send and receive numerous

emails on AIC Wilson's behalf." Nofzinger Decl. Ex. 1, at 2 (ECF 17, at 5).

For Contraband II, HO Foss found by a preponderance of the evidence that Wilson was in

possession of contraband that posed a threat to the safety, security, or orderly operations of the

facility by being "in possession of an unauthorized plastic child's toy phone in AIC Wilson's

work area, photographs of a former AIC on AIC Wilson's thumb drive that is to be utilized for

work as the Legal Assistant, a video of a former AIC on AIC Wilson's thumb drive that is to be

utilized for work as the Legal Assistant, [and] music on the thumb drive that is to be utilized for

work as the Legal Assistant." *Id.* at 2-3 (ECF 17, at 5-6). Based on this underlying factual

finding, HO Foss stated in her "Ultimate Findings of Fact and Conclusions" that Wilson violated

Rule 1.11.01 and further stated: "The contraband includes tobacco or smoking paraphernalia,

unauthorized medication, items of barter, checks, money under $10, or unauthorized sexually

explicit material." *Id.* at 3 (ECF 17, at 6). HO Foss did not identify the particular contraband

from that list in her ultimate findings of fact and conclusions or explain whether or how the contraband identified in her factual findings fell within one (or more) of the categories of that list.

For Unauthorized Use of Information Systems II, HO Foss found by a preponderance of the evidence that Wilson "exceeded the conditions of usage of a state owned computer . . . by viewing photographs of a former AIC and video of a former AIC on the state owned computer for personal use and using that computer to share the photographs and video with other AICs." *Id.* at 2 (ECF 17, at 5).

The first violation for which HO Foss found Wilson guilty—Compromising an Employee—is categorized as a "Level 1" rule violation on the Major Violation Grid. OAR 291-105-0066(7), Ex. 1. Level 1 rule violations carry a maximum sanction of 120 days in Disciplinary Segregation Unit (DSU, or segregation). *Id.* HO Foss sanctioned Wilson with the maximum sanction of 120 days in segregation, plus a $100 fine and a loss of privileges for 28 days. Nofzinger Decl., Ex. 1, at 4 (ECF 17, at 7). The latter two sanctions were suspended pending no further major rule violations. *Id.* Wilson's segregation began on August 31, 2021, and is scheduled to end on December 28, 2021. *Id.* On September 15, 2021, HO Foss's order was approved by a functional unit manager and became a final order. *Id.* at 5.

Wilson was not permitted to take anything with him into disciplinary segregation. Because he wanted to file a petition for administrative review of his disciplinary proceeding, as Wilson testified under oath at the TRO hearing, he had to request copies of the administrative review petition form from the law library and asked that three copies of that form be delivered to him in disciplinary segregation. He further testified that he then hand-wrote three copies of his petition for administrative review. Wilson mailed one copy to the Inspector General, as required;

Wilson mailed one copy to his attorneys; and Wilson kept one copy for himself. On

September 27, 2021, Wilson mailed two pre-addressed, postage-paid envelopes from his

disciplinary segregation unit. One contained a copy of his Petition for Administrative Review, on

the prescribed ODOC form, and was mailed to the Inspector General of ODOC, Craig Prins,

requesting administrative review of Wilson's disciplinary hearing order. The other contain a

copy of that completed form and was mailed to Wilson's attorneys. *See* Yoshimoto Decl., Ex. 4

(ECF 19, at 4-13); Wilson Supp. Decl. ¶ 47 (ECF 6, at 10-11). At the TRO hearing, Wilson

testified that because his attorneys received their copy on October 1, 2021, Wilson had no reason

to believe that the Inspector General did not receive his copy. Wilson complied with the

procedures for submitting petitions for administrative review in OAR 291-105-0085.

On September 29, 2021, Plaintiff's counsel separately sent a letter to Inspector General

Prins, requesting that Wilson's disciplinary order be vacated in the interest of justice, and citing

OAR 291-105-0100, which is titled "Vacating or Withdrawing the Final Order in the Interest of

Justice." Nofzinger Decl., ¶ 15 and Ex. 3 (ECF 17, at 3, 39-66). This provision establishes no

procedures, but simply authorizes the Inspector General, Assistant Director for Operations, or

their designees, to vacate all or part of a final disciplinary order, or withdraw the order and direct

that the hearing be reopened to consider new evidence, in the interests of justice. *Id.*

Also on September 29th, Wilson's attorney also sent an email to ODOC stating that

Plaintiff intended to file suit against ODOC by October 1, 2021, unless ODOC reconsidered its

decision. Lysne Decl., ¶¶ 6-7 and Ex. 6a (ECF 16, at 2, 20-34). Later that day, Assistant Attorney

General Shannon Vincent (Vincent) replied to Chavez, informing him that ODOC was going to

stand by its decision in Wilson's disciplinary case. *Id.* at ¶ 8 and Ex. 7 (ECF 16, at 3, 69). On

October 28, 2021, Inspector General Prins issued his response denying any relief, in a letter

addressed to Wilson, not to his counsel. Nofzinger Decl., ¶ 16 and Ex. 4 (ECF 17, at 3, 67).[4] The

Inspector General's response does not mention Wilson's petition, but instead specifically

references Wilson's counsel's request to vacate the order in the interest of justice (which had

cited OAR 291-105-0100). The Inspector General's denial, however, discusses the precise

criteria for denying a petition for administrative review under OAR 291-105-0085.

Wilson filed his Complaint (ECF 1) on November 4, 2021. Wilson filed his Motion for

TRO (ECF 3) on November 22, 2021. The Court held a TRO hearing on December 6, 2021.

## DISCUSSION

Plante argues that the Court should not grant a TRO because (1) Wilson failed to exhaust

his administrative remedies, (2) Plante is not a defendant who has authority to provide the relief

requested by Wilson, and (3) Wilson has failed to show the four factors required under *Winter*.

As explained below, the Court finds that Wilson has exhausted his administrative remedies. The

Court, however, also concludes that Plante does not have the legal authority or ability to

effectuate the specific relief requested by Wilson. Thus, the Court denies Wilson's motion for

TRO on that basis grounds and declines to address four factors under *Winter*.

## A. PLRA Exhaustion

Plante argues that Wilson may not pursue any federal court claim because he has not

exhausted his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e. The PLRA

provides in relevant part:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

---

[4] Plaintiff did not receive Inspector General Prins's response until about November 17, 2021. Yoshimoto Decl., ¶ 9 (ECF 19).

42 U.S.C. § 1997e(a). This exhaustion requirement serves two primary purposes: (1) to promote efficient resolution of disputes; and (2) to protect agency authority by requiring adherence to agency procedures and by allowing agencies an opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion requirements are directed toward parties who, "if given the choice, would not voluntarily exhaust." *Id.* Thus, to satisfy the PLRA exhaustion requirement, a prisoner must "properly" exhaust administrative remedies, including "compliance with an agency's deadlines." *Id.* at 90-91.

A prisoner's failure to exhaust administrative remedies may be excused "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (per curiam) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014)). Courts employ a burden-shifting framework in analyzing administrative exhaustion. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams*, 775 F.3d at 1191. Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* This can include "by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* (quoting *Albino*, 747 F.3d at 1172). "The ultimate burden of proof, however, remains with the defendants." *Id.*

Plante argues that Wilson did not exhaust his administrative remedies, as required by the PLRA, because he never sought administrative review under OAR 291-105-0085, which

establishes the administrative review procedures for Level I rule violations. Plante asserts that Wilson's counsel's request for vacatur under OAR 291-105-0100 was insufficient to exhaust Wilson's administrative remedies.

The Court has considered the evidence and arguments presented and finds by a preponderance of the evidence that Wilson did complete and submit the petition for administrative review in the form required by OAR 291-105-0085 and that this petition contains all information required under that rule. Wilson put the completed and signed petition in a postage-paid envelope and gave it to prison staff for mailing. He also mailed a copy to his counsel. The copy that Wilson sent to his attorneys was received on October 1, 2021. Thus, Wilson did everything that the law requires for him to exhaust administrative remedies.

Plante argues that the purpose of exhaustion is to give the state facility the opportunity to review the matter and itself correct any mistakes before allowing a federal lawsuit to proceed. Plante contends that because the Inspector General did not receive Wilson's petition, the Inspector General never had that opportunity. The Court disagrees. The Inspector General's October 28, 2021 response to Wilson belies this argument.

The October 28, 2021 denial by Inspector General Prins, although purportedly denying counsel's request for vacatur, effectively made a determination under OAR 291-105-0085. That rule requires the Inspector General to review the case to determine whether there was substantial compliance with OAR 291-105, whether the finding was based upon a preponderance of the evidence, and whether the sanction was imposed in accordance with the provisions of OAR 291-105, and then decide whether to re-open, dismiss, or vacate the order. OAR 291-105-0085(5)-(8). The Inspector General applied the three required factors of OAR 291-105-0085(5). First, the Inspector General found that the "case was handled in accordance with the provisions outlined

in . . . (OAR 291-105)." ECF 19, at 15. Second, the Inspector General concluded that "the findings were based on a preponderance of the evidence. *Id.* Third, the Inspector General concluded that "the sanctions recommended were appropriate given the circumstances of this case and [Wilson's] history." *Id.* The Inspector General also emphasized that Wilson's case had been "thoroughly reviewed" and that the Inspector General found "no compelling reason to vacate, modify, or re-open the case." *Id.* Thus, the Inspector General appears to have resolved Wilson's OAR 291-105-0085 petition on the merits.

When asked at oral argument what more a resolution of an OAR 291-105-0085 petition would be expected to include in addition to what the Inspector General already had included in his October 28, 2021, letter, counsel for Plante could not provide any additional findings or discussion that would be expected or needed. Wilson testified that he concluded after reading the October 28, 2021, that the Inspector General had resolved Wilson's petition, and the Court finds that conclusion to be reasonable based on the contents of the letter. Further, the Court notes that although the Inspector General purports to be responding to *counsel's* request, the letter is addressed to *Wilson*, which further supports that the Inspector General effectively resolved Wilson's petition, not counsel's letter (or not solely counsel's letter). Thus, Plante fails to show that Wilson did not exhaust his administrative remedies.

Alternatively, even if Inspector General Prins's letter dated October 28, 2021 did not resolve Wilson's petition but only counsel's letter and even if Wilson was required to wait 60 days after October 1, 2021, to be deemed to have exhausted his administrative remedies, the Court would still excuse exhaustion under the specific circumstances of this case. The Court finds that Wilson has sufficiently shown that the administrative remedy for his petition was "effectively unavailable" at least after October 28, 2021. As of that date, Wilson's petition

already had been, for all practical purposes, conclusively determined and rejected by Inspector

General Prins. Waiting for any further administrative remedy for Wilson's petition at that point

would have been obviously futile and thus not available as a practical matter and not capable of

use by Wilson. *See Williams*, 775 F.3d at 1191.

**B.  Effective Remedy**

Wilson names only one defendant in this action—Jerry Plante, an Inspector with ODOC.

The other "defendants" are identified only as "John Does 1-10," against whom Wilson's

requested injunctive relief may not be issued. Wilson offers no evidence or argument that

injunctive relief would be appropriate against them, considering lack of notice and lack of

allegations or evidence that any of them have the appropriate authority. *See Bravado Int'l Grp.*

*Merch. Servs., Inc. v. Does 1-100*, 2019 WL 3425990, at \*3 (E.D. Cal. July 30, 2019)

("Furthermore, plaintiff has not shown how the injunction can bind the unserved Doe defendants,

given applicable notice requirements.").

In his motion for TRO, Wilson requests that the Court order Plante to do the following:

(1) reverse the disciplinary findings made against Wilson; (2) release Wilson from the

disciplinary segregation unit; (3) place Wilson back into his incentive housing; and (4) cease

retaliating against Wilson for his engagement in protected activity. The Court finds that the latter

relief is inappropriate for a TRO—it is essentially a request that Plante comply with the law. In

his response, Plante argues that, although he conducted the underlying investigation and wrote

the misconduct report that led to the disciplinary hearing and Wilson's ensuing sanctions, he had

no further involvement in Wilson's case, and has no authority to reverse the disciplinary findings

or change Wilson's housing placement.

In his reply, Wilson did not directly respond to Plante's assertion that he was not capable

of granting the relief Wilson seeks, but rather notes that if Plante rescinded his misconduct

report, that that would necessarily result in the invalidation of the disciplinary findings and would trigger his removal from segregation. ECF 18, at 16 ("Plaintiff can go further and request this Court to compel Defendants [*sic*] to rescind their [*sic*] misconduct report made against Plaintiff, because that is what triggered the disciplinary findings made against him, placing him in solitary confinement."). Plaintiff, however, offers no evidence showing that if Plante "rescinded" his misconduct report that would result in the invalidation of the HO Foss's disciplinary findings, conclusion, and order. Most importantly, Wilson did not request in his motion for TRO the relief of rescinding Plante's misconduct report—instead, the relief requested is reversing the disciplinary findings, which were made by HO Foss. Further, at oral argument, Wilson's counsel was unable to identify any evidence in the record to suggest that Plante has the legal authority or ability to rescind the disciplinary findings, remove Wilson from segregation, or return Wilson to incentive housing. Wilson's counsel speculated that Plante might be a "designee" from the Inspector General's office with authority to vacate or modify final orders but could not identify any evidence in the record supporting such a conclusion.

A temporary restraining order binds only the parties, their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation" with those individuals. FRCP 65(d)(2)(A)-(C). The Court finds that the relief Wilson requests here— to reverse the disciplinary findings, release Wilson from segregation, and return him to incentive housing—cannot be done by Plante, who is the only named Defendant in this lawsuit. Plante is an inspector in the Special Investigations Unit, with authority to conduct investigations. There is no record evidence that Plante has the legal authority or ability—and Wilson fails sufficiently to show that Plante does have the authority or ability—to bring about the relief that Wilson requests. *See Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (noting that an official was

"the proper defendant on a claim for prospective injunctive relief from a prison regulation, because he would be responsible for ensuring that injunctive relief was carried out"). The Court will not order injunctive relief that cannot be effectuated—to do so would render the TRO an improper advisory opinion. *See Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1048 (9th Cir. 2019) ("[T]he court must be empowered to issue a decision that serves as more than an advisement or recommendation."). In the absence of a named defendant with the legal authority or ability to carry out the relief that Wilson requests, the Court must deny Wilson's motion for TRO, even assuming that Wilson could satisfy the four factors under *Winter*.

## CONCLUSION

The Court DENIES Plaintiff's Motion for Temporary Restraining Order (ECF 3).

**IT IS SO ORDERED**.

DATED this 7th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge