**Juan C. Chavez**, OSB #136428
**Franz H. Bruggemeier**, OSB #163533
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

   Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARK WILSON | Case No. 6:21-cv-01606-SI |
| Plaintiffs, | |
|   v. | DECLARATION OF COUNSEL |
| JERRY PLANTE, and JOHN DOES 1-10. | |
| Defendants. | |

I, Juan C. Chavez, declare as follows:

1. I am one the attorneys for the Plaintiff in this action.

2. I make this declaration to identify exhibits in support of Plaintiff's Motion to Amend Complaint, and to detail efforts to confer and resolve the present matter.

3.  On December 7 and 9, 2021, the parties conferred about the proposed Motion to Amend Complaint. I spoke with Attorney for Defendant Kenneth Crowley. I was informed that the Defendants do not oppose the relief sought by this Motion.

4. Exhibit 1 is a true and correct copy of the proposed First Amended Complaint without track

changes.

5. Exhibit 2 is a true and correct copy of the proposed First Amended Complaint with track

changes.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY

KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS

EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

      DATED, this December 9, 2021.

                              /s/ *Juan C. Chavez*
                              Juan C. Chavez, OSB #136428
                              Franz H. Bruggemeier, #163533

                              Attorneys for Plaintiff

**Juan C. Chavez**, OSB #136428
**Franz H. Bruggemeier**, OSB #163533
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

      Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARK WILSON<br><br>      Plaintiffs,<br><br>  v.<br><br>JERRY PLANTE, RONNIE FOSS, CRAIG PRINS, JOSH HIGHBERGER, MELISSA NOFZIGER, and JOHN DOES 1-10.<br><br>      Defendants. | Case No. 6:21-cv-01606-SI<br><br><br>FIRST AMENDED COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983) |

**INTRODUCTION**

1.     This is a civil rights action brought by Plaintiff, Mark J. Wilson, a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants have retaliated against Plaintiff for his protected conduct as an inmate legal assistant, prison advocate, and for his efforts to access the courts in his own case. Plaintiff also alleges Defendants have violated his right to due process in his disciplinary hearing. Plaintiff seeks damages for actions by Defendants which violate his protected constitutional rights pursuant to the First and Fourteenth Amendments to the

Constitution. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages and reasonable costs and attorney's fees, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over Plaintiff's claims for violation of federal constitutional rights, pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the cause of action arises under 42 U.S.C. § 1983.

3.      Most actions alleged herein occurred in Marion County, Oregon. Venue is properly before this District of Oregon pursuant to 28 U.S.C. § 1391(b) where all of the events giving rise to these claims occurred in this judicial district and because Defendants are subject to personal jurisdiction in the District Court of Oregon.

## PARTIES

4.      Plaintiff MARK J. WILSON is, and was at all times relevant, a prisoner of the Oregon Department of Corrections (ODOC). At all relevant times, he was and is currently confined within the Oregon State Correctional Institution (OSCI) in Salem, Marion County Oregon. At all relevant times, Plaintiff was employed at OSCI as an inmate legal assistant, as defined by OAR 291-139-0130(2) and OAR 291-139-0160.

5.      Defendant JERRY K. PLANTE is, and was at all times relevant, an employee of the ODOC, assigned as an inspector in the Special Investigation Unit (SIU). He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

6.      Defendant RONNIE FOSS is, and was at all times relevant, an employee of the ODOC, assigned as a disciplinary hearings officer. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

7.      Defendant CRAIG PRINS is, and was at all times relevant, an employee of the ODOC, assigned as the Inspector General for the Oregon Department of Corrections. He has been personally involved in the violations alleged herein. He is sued in sis official and individual capacities.

8.      Defendant JOSH HIGHBERGER is, and was at all times relevant, an employee of the ODOC, assigned as the Superintendent and functional unit manager of OSCI. He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

9.      Defendant MELISSA NOFZIGER is, and was at all times relevant, an employee of the ODOC, assigned as an Assistant Inspector General of ODOC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

10.     Defendant JOHN and JANE DOES 1-20 are and were at all times relevant, employees of the ODOC whose identifies are currently unknown to Plaintiff. All Doe Defendants have been personally involved in the violations alleged herein. Plaintiff will amend this complaint to formally name all DOE Defendants once their identifies are revealed to Plaintiff in discovery. All Doe Defendants are sued in their official and individual capacities.

11.     All Defendants have acted, and continue to act, at all times relevant under color of state law.

## FACTUAL ALLEGATIONS

Relevant Polices, Practices, and Rules of the ODOC

12.     The "Oregon Way" is a philosophical approach to corrections created by the ODOC based on best practices in security and the belief that humanizing and normalizing the prison environment is beneficial for employees and prisoners. This innovative approach to incarceration

stems from an investigation and immersion in the Norwegian correction system. The Norwegian system is driven by the idea that incarcerated people are "human beings in prisons."

13.     ODOC Director Collette Peters, who developed and promotes the "Oregon Way," explained that Oregon prisons should be places where punishment is the absence of freedom and community, but where "everything else models life on the outside to every degree possible" and prisoners are treated with dignity.

14.     ODOC Director Peters has stated the "Oregon Way" policy in testimony before the Oregon Legislature, stating that "we now know that in order to protect society, help our Adults in Custody (AICs) take personal responsibility, be accountable for their actions, and engage in reformation we must treat them in a normalized environment and in the most humane way possible."

15.     The adoption of the "Oregon Way" and ODOC Director Peters' public statements create a reasonable expectation by ODOC employees, prisoners, and the public that prisoners in ODOC custody will be treated "in a normalized environment and in the most humane way possible."

16.     Prison officials have a constitutional obligation to provide prisoners with law libraries or adequate assistance from persons trained in the law to assist in the preparation and filing of meaningful legal papers. ODOC has fulfilled that duty by providing both law libraries and legal assistance to prisoners at the Oregon State Correctional Institution (OSCI).

17.     ODOC rules under Chapter 291, Division 139 describe the responsibilities of library coordinators and legal assistants in the following ways. Library coordinators are responsible for supervising facility legal libraries and the provision of law library services to inmates, including the activities of the assigned legal assistants. The library coordinator may instruct inmates on

how and where to access requested law library services and other resources, but may not offer

advice or directly assist an inmate with their legal issues, case or matter.

18.    OAR 291-139-0160(11) prohibits the library coordinator from assigning or removing an

inmate legal assistant based on retaliation for legitimate legal activities done in accordance with

ODOC rules.

19.    Based on OAR 291-139-0160(11), inmate legal assistants have a reasonable expectation

that they will not be retaliated against by any ODOC employee for their authorized legal

activities.

20.    Inmate legal assistants are authorized and expected in ODOC to do legal activities that

would otherwise constitute the unauthorized practice of law under Oregon law.

21.    Prisoners must obey ODOC employees or be in violation of ODOC rules.

22.    ODOC employees are permitted to make day-to-day decisions and authorize prisoner

activity within the scope of the employee's duties, including deciding whether a prisoner's action

is a violation of ODOC rules.

23.    Prisoners have a reasonable expectation to not be punished for violating ODOC rules

when their actions have been authorized by an ODOC employee.

<u>Plaintiff, His Position as Legal Assistant at OSCI, and the Library Coordinator</u>

24.    Plaintiff has been incarcerated for over 30 years within the ODOC for a crime he

committed at 18 years of age.

25.    During his time within the ODOC, Plaintiff is well known as an advocate for prisoner's

rights, working in as a legal assistant in ODOC, contributing as a writer for Prison Legal News,

and participating in legislative matters.

26.    Plaintiff has shown himself to be an honest and trustworthy person to both correctional

staff, other prisoners, and members of the public during his many years of incarceration.

27.    Plaintiff's only rule violation in the last 34 years of his incarceration occurred in August

1991 when he was disciplined for seven days for protesting prison labor wages.

28.    Plaintiff has been targeted by ODOC staff and prisoners alike over the years due to his

work as legal assistant and as a prisoner advocate. For example, ODOC has previously retaliated

against Plaintiff for his assistance in a civil suit requiring ODOC to provide adequate medical

treatment to prisoners. *See Wilson v. Van Valkenburgh,* cv-06-1391-SU.

29.    From February 2012, until earlier this year, Plaintiff was assigned as an inmate legal

assistant at OSCI. During that time, he worked under at least five library coordinators at OSCI,

including, until most recently, under the supervision of library coordinator Pam McKinney

(hereafter "McKinney").

30.    Plaintiff's duties as an inmate legal assistant included but were not limited to, drafting

motions, affidavits, legal memoranda, petitions, complaints, letters, appellate briefs,

administrative review requests and prison grievances.

31.    As an inmate legal assistant Plaintiff has received requests that legal coordinators direct

him to provide assistance on, including by not limited to: appeals of convictions and sentences,

conditions of confinement challenges, Board of Parole issues, child support/custody/visitation

issues, dissolution proceedings, wills and estates issues, defense of civil actions.

32.    Throughout his entire time as an inmate legal assistant, he was allowed discretion with

respect to legal matters, to do those things he deemed necessary to properly and effectively

perform his duties as an inmate legal assistant.

33.     Throughout the many years Plaintiff served as an inmate legal assistant he developed working relationships with numerous attorneys, prisoner and mental health advocacy groups, court personnel and others as necessary to carry out his legal assistant duties.

34.     Until on or about April 15, 2021, McKinney had worked for over 22 years as a veteran employee with the ODOC. She had been through countless hours of training during her career.

35.     McKinney authorized Plaintiff and other legal assistants to print documents and provide other services without charging prisoners for the initial printing costs.

36.     McKinney authorized and facilitated legal assistants, including Plaintiff, and prisoners to have emails and phone calls sent and received to outside individuals.

37.     McKinney oversaw the operation of the law library during the catastrophic events of the Covid-19 pandemic and wildfires in Oregon last year, in which prisoners were evacuated from OSCI under threat of fire and OSCI was on numerous modified lockdowns.

38.     At all relevant times, McKinney authorized Plaintiff to assist other OSCI prisoners and present his own legal issues with (a) lawsuits related to Covid-19, including *Maney v. Brown,* 6:20-cv00570-SB, (b) clemency applications; (c) legal matters related to an ODOC's employee losing protected information that was taken home on a work computer; (d) legislative matters, (e) and the development of a mentorship program at OSCI with the support of ODOC administrative employees.

39.     McKinney's conduct and relationship with all prisoners at OSCI is consistent with the "Oregon Way," that is, by humanizing and normalizing the prison environment and treating prisoners with dignity and by modeling life on the outside "to every degree possible."

40.     Plaintiff has always maintained a professional and respectful working relationship with ODOC employees, including McKinney, which is also consistent with the Oregon Way.

41.    As example of the environment McKinney created at OSCI law library, ODOC posted on

Twitter (ODOC Twitter) on December 30, 2020, pictures of McKinney at work within the OSCI

library as shown below:



Events Giving Rise to § 1983 Suit

42.    On January 21, 2021, Plaintiff was removed from his job as inmate legal assistant and

placed on work restriction by Defendant Plante, an investigator for the ODOC's Special

Investigative Unit (SIU).

43.    On January 21, 2021, Defendant Plante met with Plaintiff and ordered him to cease

assisting other inmates with their legal affairs.

44.    On or about January 21, 2021, McKenney was removed from her supervision over the

OSCI library and stationed at a desk in another ODOC facility.

45.    On or about April 15, 2021, McKenney, following what she described as a four-hour

grilling by ODOC employees that was "brutal," resigned from her ODOC job because she was

forced to "[e]ither resign or lose the [retirement] money match."

46.     On August 4, 2021, Plaintiff received a misconduct report that was signed by Defendants

Plante and by Melissa Nofziger that same day.

47.     A true and genuine copy of the August 4, 2021, misconduct report is attached hereto as

this court's record at Docket No. 15, pages 4-6.

48.     The misconduct report alleged Plaintiff had violated four ODOC rules: Compromising an

Employee (4.15); Contraband II (1.11); Unauthorized Use of Information Systems I (1.25); and

Disobedience of an Order I (4.01).

49.     In the misconduct report, Defendant Plante explained that upon receiving an

"anonymous" communication about McKinney, Plaintiff, and "other unauthorized things in the

OSIC library," he conducted an investigation.

50.     In the misconduct report, Defendant Plante explained that he had searched Plaintiff's

assigned work area in the legal library and found a "white plastic child's toy phone" that

McKinney told Plante she had purchased with her own money and gave to Plaintiff without

supervisor approval. For this, Defendant Plante charged Plaintiff with Contraband II (1.11) and

that he engaged in an unauthorized relationship with an employee.

51.     An accurate image of the toy phone is show below:



52.    McKinney placed the child's toy phone on Plaintiff's work desk as a joke, not as a gift, which Defendant Plante knew but intentionally omitted from his disciplinary report.

53.    In the misconduct report, Defendant Plante explained that he "reviewed hundreds of emails, from January 2020 through January 2021," that McKinney had sent and received from "individuals at an outside justice resource firm, or attorneys and other professionals," all of whom were associated with Plaintiff in some manner. "Upon [Defendant Plante's] closer review of the emails," Plante explained, he discovered that the emails contained "messages and attached legal documents[.]" Defendant Plante reported that the sending of these emails with attached legal documents saved Plaintiff "at least $387.40" in copy costs – which constituted, in his view, a violation of ODOC rule "Disobedience of an Order I.

54.    Defendant Plante stated in his disciplinary report that he had "reviewed a number of legal calls AIC Wilson had been allowed through the legal library phones," and that "between January 2020 through January 2021, AIC Wilson had been given 146 calls to individuals at the outside justice resource firm, and he and received an additional 15 calls to five other individuals."

55.    The emails and phone calls that Defendant Plante admits to reviewing and forming the basis for Plaintiff's rule violation were, among other things, protected attorney client communications and legal materials sent and received by and through, and with permission from, McKinney.

56.    Defendant Plante omits from his misconduct report the fact that prisoners, including legal assistants, do not have access to telephones or email. Phone calls with legal professionals are scheduled by McKenny and, when calls are received, she transfers the call to a secure phone. Similarly, McKenney's work emails are sent and received by her alone.

57.     With respect to rule violation "Unauthorized Use of Information Systems I," Defendant Plante alleged in the misconduct report that Plaintiff knowingly chose to disregard and violate ODOC rules by printing a single copy of AIC's legal document from his printer after assisting in the preparation of the document without charging the AIC for the copy.

58.     With respect to rule violation "Compromising an Employee," Defendant Plante alleged that Plaintiff "engaged in an unauthorized personal relationship" with McKenney because: (a) she gave a toy phone to Plaintiff; (b) she directly assisted Plaintiff with his "legal issues, case, and matters"; (c) she saved him money (at least $387.40) by sending and emailing "legal documents" to attorneys and other professionals rather than charge him through regular mail; and (d) because she "admitted to giving [Plaintiff] special privileges which not all AICs were afforded."

59.     Defendant Plante represented in the misconduct report that he had interviewed McKinney and "she admitted that her relationships with several individuals at the outside justice resource firm became more of a personal friendship than a professional relationship." McKinney has declared that Defendant Plante had used intimidation and bullying tactics—all why threatening her ability to ever be employed again—to coerce statements out of her. She does not in fact believe that she was compromised Plaintiff, nor that he broke any rules. She further declares that hers and Plaintiff's actions were condoned and encouraged by the facility.

60.     Defendant Plante stated in the misconduct report that Plaintiff's "actions were conducted in the legal library, while he was in his role as a legal assistant."

61.     Each and every alleged rule violation in Defendant Plante's misconduct report occurred under the supervision, authorization, or direction of McKinney in her role as OSCI legal coordinator.

62.     In all the many years and under the five different legal coordinators, Plaintiff has never

been told that his actions and conduct as a legal assistant violated ODOC rules. Indeed, Plaintiff

has received letters of commendation from library coordinators, including McKinney, for his

work.

63.     On or about August 10, 2021, Defendant Foss conducted a disciplinary hearing for

Plaintiff in case number 2103 OSCI 0056 OSCI 35.

64.     On or about August 10, 2021, Plaintiff submitted to Defendant Foss a motion for

polygraph examination and a motion for the introduction of witnesses and testimony pursuant to

the Fourteenth Amendment to the United States Constitution. The motion for witnesses was 47

pages, included 20 witnesses, with proposed questions for each witness. A true copy of that

document is attached to this Complaint.

65.     On August 31, 2021, Defendant Foss denied "AIC's request for witness(es)" on the

ground that "the proffered testimony would not constitute a defense to the charges nor

substantially mitigate the rule violations."

66.     On August 31, 2021, Plaintiff was found guilty of three of the alleged violations -

Contraband II, Compromising an Employee, and Unauthorized Use of Information Systems II -

and given a sanction of 120 days in segregation, the maximum penalty. Plaintiff was found not

guilty of the two other rule violations.

67.     Subsequent to Plaintiff's termination from position as legal assistant, ODOC removed

hundreds of law books and research materials that were used by the legal assistants and inmates

at OSCI over the last two decades.

68.     On September 7, 2021, Plaintiff filed a grievance, numbered OSCI_2021_09_049,

against Defendant and other ODOC officials for retaliatory conduct.

69.     On September 14, 2021, OSCI grievance coordinator rejected Plaintiff's grievance on the grounds that "An AIC may not submit a grievance, regarding misconduct reports, investigations, lending to or arising from misconduct reports, disciplinary hearings, findings, sanctions."

70.     On September 15, 2021, OSCI Superintendent Josh Highberger approved and signed the preliminary order, making it a Final Order in Hearing Case Number 2103 OSCI 0056 OSCI 35.

71.     On September 27, 2021, Plaintiff submitted a Petition for Administrative Review pursuant to OAR 291-105-0085 of the Final Order in Hearing Case Number 2103 OSCI 0056 OSCI 35. Plaintiff submitted a hand-written Petition for Administrative Review by mailing it in a sealed envelope to the ODOC Inspector General Craig Prins. At the same time, Plaintiff mailed an identical hand-written copy Petition for Administrative Review to his counsel Julia Yoshimoto, including a cover letter stating that "[e]nclosed you will find a copy of the administrative view request that I sent to the Inspector General today" and "[t]his is administrative review under OAR 291-105-0085 for PLRA exhaustion purposes. Pursuant to OAR 291-105-0085(10) the Inspector General has 60 days from the date of receipt of this request to respond." A true copy of Plaintiff's letter (redacted) and Petition for Administrative Review is in this court's record at Docket No. 19, pages 4-13.

72.     On or about November 27, 2021, Plaintiff had not received a response to his Petition for Administrative Review, described in the preceding paragraph, within 60 days as required under OAR 291-105-0085(10).

73.     On or about November 29, 2021, Plaintiff's counsel informed him that the ODOC was arguing in Defendant Jerry Plante's Response in Opposition to Plaintiff's Motion for Temporary Restraining Order that "Plaintiff never submitted a petition for administrative review" based on

the sworn statement of Jeremy Nofziger, an Assistant Inspector General in the Office of Inspector General.

74.    To the extent the Inspector General's Office did not receive Plaintiff's timely filed Petition for Administrative Review, described in the preceding paragraph, it was by circumstances not in Plaintiff's control, including ODOC officials deliberately destroying his mail or by other mistake in handing and processing his mail.

75.    ODOC's failure to timely respond to Plaintiff's Petition for Administrative Review of Final Order in Hearing Case Number 2103 OSCI 0056 OSCI 35, or deliberate or mistaken actions, described in the previous paragraph, thwarted his ability to take advantage of the administrative remedy rendering it unavailable.

76.    Plaintiff did not include in this Complaint his claim that Defendant Foss violated his right to due process because he was under the belief that ODOC's Inspector General was reviewing his Petition for Administrative Review, described in the preceding paragraph, and intended to exhaust that administrative remedy to comply with the Prison Litigation Reform Act.

77.    Defendant Prins rendered an opinion on Plaintiff's petition for relief on or about October 28, 2021. Defendant Prins addressed the relief sought in both Plaintiff's petition and counsel for Plaintiff's petition, but did not identify which document he was referring to. Despite having ample evidence that Defendants Plante and Foss has issued improper misconduct reports and made improper disciplinary findings, Defendant Prins denied Plaintiff relief. Defendant Prins has the authority to rescind both the misconduct report and the disciplinary findings made against him.

78.    Plaintiff is currently in segregation, suffering an atypical and significant hardship from the ordinary experience of prison life.

## FIRST CLAIM FOR RELIEF

### (First and Fourteenth Amendment – Retaliation)

79.     Plaintiff realleges paragraphs 1 through 78.

80.     From January 2021 to the present, Defendants personally engaged in and continue to
engage in retaliatory actions against Plaintiff in violation of his First and Fourteenth Amendment
rights.

81.     Defendant Plante has taken adverse actions against Plaintiff, including by not limited to:
(1) reading Plaintiff's confidential legal material; (2) restricting, removing and punishing him for
his work as a legal assistant and for his prisoner advocacy (3) placing him on work restriction
from January 2021 until August 10, 2021; and (6) fabricating evidence and writing a false
misconduct report to charge Plaintiff with disciplinary rule violations.

82.     The adverse acts of Defendant* Plante, alleged in the previous paragraphs, were
intentionally taken because of Plaintiff's work as a legal assistant helping other prisoners on
legal matters, his accessing the court, communication with legal professionals and his counsel by
email and telephone, and his association and communication with the legal and legislative
community as a prison advocate – all of which are protected conduct involving litigation,
advocacy, and political speech.

83.     Defendant Plante's adverse actions have had a chilling effect on Plaintiff's exercise of his
First Amendment rights.

84.     Defendant Plante charged Plaintiff for rule violations for conduct authorized, facilitated,
or done by McKinney in her role as OSCI legal coordinator.

85.     Defendant Plante charged Plaintiff but not other legal assistants and prisoner's at OSCI,
even though he knew those individuals were granted similar privileges by McKinney and took
similar actions.

86.      Defendant Plante punished Plaintiff because McKinney was friendly and helpful in
carrying out her job as OSCI legal coordinator, and specifically for providing Plaintiff access to
the courts.

87.     Defendant Plante's adverse actions are inconsistent with the Oregon Way in that he has
punished Plaintiff because McKinney normalized the prison environment and treated Plaintiff
and other prisoners humanely.

88.     Defendant Plante used the investigative and misconduct system as subterfuge to obscure
his intention to retaliate against Plaintiff for his protected conduct.

89.     Defendant Plante's actions against Plaintiff do not reasonably advance a legitimate
correctional goal nor were Defendants' actions narrowly tailored enough to achieve such goals,
to the extent they exist.

## SECOND CLAIM FOR RELIEF

### (Fourteenth Amendment – Due Process)

90.     Plaintiff realleges paragraphs 1 through 89.

91.     The Fourteenth Amendment provides that no state shall deprive any person of life, liberty
or property without due process of law.

92.     It is well settled that prisoners are entitled to certain due process protections when subject
to disciplinary sanctions that contemplate restraint imposing atypical and significant hardship on
the prisoner in relation to the ordinary incidents of prison life.

93.     Plaintiff's condition, that is, his restraint, is atypical and significant because as a result of the misconduct proceedings and Final Order finding him guilty of serious misconduct the duration of his confinement will invariably be affected by depriving him of a full reduction in is prison term and by postponing his scheduled release date of January 9, 2025.

94.     Because Plaintiff has a liberty right at stake, he had the right to call witnesses at a disciplinary hearing unless doing so would be inconsistent with institutional safety and correctional goals and the right to marshal the facts and present a defense to the misconduct violations.

95.     Defendant Foss's refusal to call Plaintiff's witnesses at his disciplinary hearing violated his due process rights.

96.     Contrary to Defendant Foss's reason for not calling Plaintiff's witnesses, those witnesses – and specifically McKinney – would have provided evidence refuting Defendant Plante's false statements in the misconduct report and showing that Plaintiff was not guilty of the misconduct violations.

97.     Defendant Foss's refusal to call Plaintiff's witnesses deprived him of the ability to marshal the facts and present a defense to the alleged misconduct violations.

98.     As one example of the favorable evidence that Plaintiff would have been able to present had witnesses been allowed by Defendant Foss is the declaration of Pam McKinney. *See* Dkt. No. 7. That evidence shows the falsity of Defendant Plante's statements in the misconduct report and provides Plaintiff a defense to the alleged misconduct violations.

99.     Plaintiff was deprived of the ability to prepare and present a defense to the allegations against him, a meaningful opportunity to be heard and a fundamentally fair misconduct hearing.

100.    Defendant Foss's Final Order finding Plaintiff guilty of serious misconduct lacked "some evidence" in violation of Plaintiff's right to due process.

101.    Defendant Nofziger had a duty to review the misconduct report to determine if it was accurate, appropriate, and supported by sufficient information. She failed to do that.

102.    Defendant Highberger had a duty upon receiving the preliminary order to evaluate whether one or more the reasons specified in OAR 291-105-0031(5) warranted dismissal or changing the disciplinary sanction(s) or approve and sign the preliminary order.

103.    Defendant Highberger's failure to dismiss the misconduct report or change the sanction in light of the findings and conclusions, given the lack of evidence to support those violations, violated Plaintiff's right to due process.

104.    Defendant Prins has a duty upon receiving a Petition for Administrative Review under OAR 291-105-0085 to review the Final Order to determinate whether (1) there was substantial compliance with OAR 291-105; (2) the findings were based upon preponderance of the evidence; and (3) the sanction was imposed in accordance with the provisions set forth in OAR 291-105.

105.    Defendant Prins has the authority to dismiss or vacate the Final Order or reopen the case made against Plaintiff under OAR 291-105. *See* OAR 291-105-0085(7)

106.    Despite being provided ample evidence of the deficiencies with Defendant Plante's misconduct report and Defendant Foss's Final Order, Defendant Prins did not dismiss or vacate the Final Order or reopen the case.

107.    Defendant Prins' failure to dismiss or vacate the Final Order or reopen the case against Plaintiff, in light of the evidence presented to him, violated Plaintiff's right to due process.

**RELIEF SOUGHT**

108.   WEREFORE Plaintiff prays for judgment as follows:

A.  Issue a Declaratory Judgment stating that Defendant Plante retaliated against Plaintiff
in violation of the First and Fourteenth Amendments to the United States
Constitution.

B.  Issue a Declaratory Judgment stating that Defendant Foss denial of due process at
Plaintiff's misconduct hearing violated the Fourteenth Amendment to the United
States Constitution.

C.  Issue a Declaratory Judgment stating that Defendant Prins denial of due process at
Plaintiff's Administrative Review violated the Fourteenth Amendment to the United
States Constitution.

D.  Issue and Injunction ordering Defendants and their agents to immediately:

1.   Cease engaging in any and all ongoing acts of retaliation against Plaintiff;

2.   Cease engaging in any and all ongoing chilling of Plaintiff's First and Fourteenth
Amendment rights for the exercise of his protected conduct.

3.   Credit Plaintiff's inmate trust account with the difference in the monetary award
he would have earned as an Inmate Legal Assistant and the amount of monetary
awards he actually received for each month from January 2021 to the present.

4.   Order Plaintiff's assignment to the OSCI law library as a legal assistant.

5.   Assign Plaintiff to incentive housing, where he was housed prior to January 20,
2021, in OSCI.

6.   Vacate or withdraw Defendant Plante's Misconduct Report.

7.   Vacate and dismiss the August 31, 2021, Final Order.

8.  Order the destruction of any and all false information created by Defendant

    Plante, described herein, that is in Plaintiff's institutional record or maintained in

    ODOC's computer systems.

9.  Order Plaintiff to be fully restored to his institutional status and privileges prior to

    the violations of Plaintiff's constitutional rights.

E.  Award compensatory damages against Defendants named in their individual capacity.

F.  Award punitive damages against Defendants for an amount to be determined at trial.

G.  Award reasonable costs and attorney fees.

Grant such other relief as this court deems just and equitable.

DATE:  December 9, 2021.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Attorney for Plaintiff

*LEAD ATTORNEY*

/s/ *Franz H. Bruggemeier*
Franz H. Bruggemeier, OSB #163533
Attorney for Plaintiff

**Juan C. Chavez**, OSB #136428
**Franz H. Bruggemeier**, OSB #163533
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

      Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARK WILSON | Case No. 6:21-cv-01606-SI |
| Plaintiffs, | |
| v. | FIRST AMENDED COMPLAINT |
| JERRY PLANTE, RONNIE FOSS, CRAIG PRINS, JOSH HIGHBERGER, MELISSA NOFZIGER, and JOHN DOES 1-10. | Civil Rights Action (42 U.S.C. § 1983) |
| Defendants. | |

**Formatted:** Left

**INTRODUCTION**

1.     This is a civil rights action brought by Plaintiff, Mark J. Wilson, a state prisoner pursuant

to 42 U.S.C. § 1983. Plaintiff alleges that Defendants have retaliated against Plaintiff for his

protected conduct as an inmate legal assistant, prison advocate, and for his efforts to access the

courts in his own case. Plaintiff also alleges Defendants have violated his right to due process in

his disciplinary hearing. Plaintiff seeks damages for actions by Defendants which violate his

protected constitutional rights pursuant to the First and Fourteenth Amendments to the

**Deleted:** plaintiff

**Deleted:** defendants

**Deleted:** plaintiff

**Deleted:** defendants

FIRST AMENDED COMPLAINT
Page 1 of 20

Constitution. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive

damages and reasonable costs and attorney's fees, pursuant to 42 U.S.C. § 1988.

**JURISDICTION AND VENUE**

2.      This court has jurisdiction over Plaintiff's claims for violation of federal constitutional

rights, pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the cause of action arises under 42

U.S.C. § 1983.

3.      Most actions alleged herein occurred in Marion County, Oregon. Venue is properly

before this District of Oregon pursuant to 28 U.S.C. § 1391(b) where all of the events giving rise

to these claims occurred in this judicial district and because Defendants are subject to personal

jurisdiction in the District Court of Oregon.

**PARTIES**

4.      Plaintiff MARK J. WILSON is, and was at all times relevant, a prisoner of the Oregon

Department of Corrections (ODOC). At all relevant times, he was and is currently confined

within the Oregon State Correctional Institution (OSCI) in Salem, Marion County Oregon. At all

relevant times, Plaintiff was employed at OSCI as an inmate legal assistant, as defined by OAR

291-139-0130(2) and OAR 291-139-0160.

5.      Defendant JERRY K. PLANTE is, and was at all times relevant, an employee of the

ODOC, assigned as an inspector in the Special Investigation Unit (SIU). He has been personally

involved in the violations alleged herein. He is sued in his official and individual capacities.

6.      Defendant RONNIE FOSS is, and was at all times relevant, an employee of the ODOC,

assigned as a disciplinary hearings officer. She has been personally involved in the violations

alleged herein. She is sued in her official and individual capacities.

FIRST AMENDED COMPLAINT
Page 2 of 20

Deleted: plaintiff's

Deleted: defendants

Deleted: plaintiff

Deleted: ORS

7.      Defendant CRAIG PRINS is, and was at all times relevant, an employee of the ODOC, assigned as the Inspector General for the Oregon Department of Corrections. He has been personally involved in the violations alleged herein. He is sued in sis official and individual capacities.

8.      Defendant JOSH HIGHBERGER is, and was at all times relevant, an employee of the ODOC, assigned as the Superintendent and functional unit manager of OSCI. He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

9.      Defendant MELISSA NOFZIGER is, and was at all times relevant, an employee of the ODOC, assigned as an Assistant Inspector General of ODOC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

10.     Defendant JOHN and JANE DOES 1-20 are and were at all times relevant, employees of the ODOC whose identifies are currently unknown to Plaintiff. All Doe Defendants have been personally involved in the violations alleged herein. Plaintiff will amend this complaint to formally name all DOE Defendants once their identifies are revealed to Plaintiff in discovery. All Doe Defendants are sued in their official and individual capacities.

11.     All Defendants have acted, and continue to act, at all times relevant under color of state law.

**FACTUAL ALLEGATIONS**

Relevant Polices, Practices, and Rules of the ODOC

12.     The "Oregon Way" is a philosophical approach to corrections created by the ODOC based on best practices in security and the belief that humanizing and normalizing the prison environment is beneficial for employees and prisoners. This innovative approach to incarceration

FIRST AMENDED COMPLAINT

Deleted: plaintiff
Deleted: defendants
Deleted: defendants
Deleted: plaintiff
Deleted: defendants
Deleted: defendants

stems from an investigation and immersion in the Norwegian correction system. The Norwegian

system is driven by the idea that incarcerated people are "human beings in prisons."

13.     ODOC Director Collette Peters, who developed and promotes the "Oregon Way,"

explained that Oregon prisons should be places where punishment is the absence of freedom and

community, but where "everything else models life on the outside to every degree possible" and

prisoners are treated with dignity.

14.     ODOC Director Peters has stated the "Oregon Way" policy in testimony before the

Oregon Legislature, stating that "we now know that in order to protect society, help our Adults in

Custody (AICs) take personal responsibility, be accountable for their actions, and engage in

reformation we must treat them in a normalized environment and in the most humane way

possible."

15.     The adoption of the "Oregon Way" and ODOC Director Peters' public statements create

a reasonable expectation by ODOC employees, prisoners, and the public that prisoners in ODOC

custody will be treated "in a normalized environment and in the most humane way possible."

16.     Prison officials have a constitutional obligation to provide prisoners with law libraries or

adequate assistance from persons trained in the law to assist in the preparation and filing of

meaningful legal papers. ODOC has fulfilled that duty by providing both law libraries and legal

assistance to prisoners at the Oregon State Correctional Institution (OSCI).

17.     ODOC rules under Chapter 291, Division 139 describe the responsibilities of library

coordinators and legal assistants in the following ways. Library coordinators are responsible for

supervising facility legal libraries and the provision of law library services to inmates, including

the activities of the assigned legal assistants. The library coordinator may instruct inmates on

how and where to access requested law library services and other resources, but may not offer

advice or directly assist an inmate with their legal issues, case or matter.

18.    OAR 291-139-0160(11) prohibits the library coordinator from assigning or removing an

inmate legal assistant based on retaliation for legitimate legal activities done in accordance with

ODOC rules.

19.    Based on OAR 291-139-0160(11), inmate legal assistants have a reasonable expectation

that they will not be retaliated against by any ODOC employee for their authorized legal

activities.

20.    Inmate legal assistants are authorized and expected in ODOC to do legal activities that

would otherwise constitute the unauthorized practice of law under Oregon law.

21.    Prisoners must obey ODOC employees or be in violation of ODOC rules.

22.    ODOC employees are permitted to make day-to-day decisions and authorize prisoner

activity within the scope of the employee's duties, including deciding whether a prisoner's action

is a violation of ODOC rules.

23.    Prisoners have a reasonable expectation to not be punished for violating ODOC rules

when their actions have been authorized by an ODOC employee.

<u>Plaintiff, His Position as Legal Assistant at OSCI, and the Library Coordinator</u>

24.    Plaintiff has been incarcerated for over 30 years within the ODOC for a crime he

committed at 18 years of age.

25.    During his time within the ODOC, Plaintiff is well known as an advocate for prisoner's

rights, working in as a legal assistant in ODOC, contributing as a writer for Prison Legal News,

and participating in legislative matters.

**Deleted:** plaintiff

26.     Plaintiff has shown himself to be an honest and trustworthy person to both correctional

staff, other prisoners, and members of the public during his many years of incarceration.

27.     Plaintiff's only rule violation in the last 34 years of his incarceration occurred in August

1991 when he was disciplined for seven days for protesting prison labor wages.

Deleted: Rule violation for 1991 violation authorized protest at wages for pay,

28.     Plaintiff has been targeted by ODOC staff and prisoners alike over the years due to his

work as legal assistant and as a prisoner advocate. For example, ODOC has previously retaliated

against Plaintiff for his assistance in a civil suit requiring ODOC to provide adequate medical

Deleted: plaintiff

treatment to prisoners. *See Wilson v. Van Valkenburgh,* cv-06-1391-SU.

29.     From February 2012, until earlier this year, Plaintiff was assigned as an inmate legal

Deleted: plaintiff

assistant at OSCI. During that time, he worked under at least five library coordinators at OSCI,

including, until most recently, under the supervision of library coordinator Pam McKinney

(hereafter "McKinney").

30.     Plaintiff's duties as an inmate legal assistant included but were not limited to, drafting

motions, affidavits, legal memoranda, petitions, complaints, letters, appellate briefs,

administrative review requests and prison grievances.

31.     As an inmate legal assistant Plaintiff has received requests that legal coordinators direct

Deleted: plaintiff

him to provide assistance on, including by not limited to: appeals of convictions and sentences,

conditions of confinement challenges, Board of Parole issues, child support/custody/visitation

issues, dissolution proceedings, wills and estates issues, defense of civil actions.

32.     Throughout his entire time as an inmate legal assistant, he was allowed discretion with

respect to legal matters, to do those things he deemed necessary to properly and effectively

perform his duties as an inmate legal assistant.

33.     Throughout the many years Plaintiff served as an inmate legal assistant he developed

working relationships with numerous attorneys, prisoner and mental health advocacy groups,

court personnel and others as necessary to carry out his legal assistant duties.

Deleted: plaintiff

34.     Until on or about April 15, 2021, McKinney had worked for over 22 years as a veteran

employee with the ODOC. She had been through countless hours of training during her career.

35.     McKinney authorized Plaintiff and other legal assistants to print documents and provide

other services without charging prisoners for the initial printing costs.

Deleted: plaintiff

36.     McKinney authorized and facilitated legal assistants, including Plaintiff, and prisoners to

have emails and phone calls sent and received to outside individuals.

Deleted: plaintiff

37.     McKinney oversaw the operation of the law library during the catastrophic events of the

Covid-19 pandemic and wildfires in Oregon last year, in which prisoners were evacuated from

OSCI under threat of fire and OSCI was on numerous modified lockdowns.

38.     At all relevant times, McKinney authorized Plaintiff to assist other OSCI prisoners and

present his own legal issues with (a) lawsuits related to Covid-19, including *Maney v. Brown,*

6:20-cv00570-SB, (b) clemency applications; (c) legal matters related to an ODOC's employee

losing protected information that was taken home on a work computer; (d) legislative matters, (e)

and the development of a mentorship program at OSCI with the support of ODOC administrative

employees.

Deleted: plaintiff

39.     McKinney's conduct and relationship with all prisoners at OSCI is consistent with the

"Oregon Way," that is, by humanizing and normalizing the prison environment and treating

prisoners with dignity and by modeling life on the outside "to every degree possible."

40.     Plaintiff has always maintained a professional and respectful working relationship with

ODOC employees, including McKinney, which is also consistent with the Oregon Way.

41.    As example of the environment McKinney created at OSCI law library, ODOC posted on

Twitter (ODOC Twitter) on December 30, 2020, pictures of McKinney at work within the OSCI

library as shown below:





**Deleted:**

Events Giving Rise to § 1983 Suit

42.    On January 21, 2021, Plaintiff was removed from his job as inmate legal assistant and

placed on work restriction by Defendant Plante, an investigator for the ODOC's Special

Investigative Unit (SIU).

**Deleted:** plaintiff

**Deleted:** defendant

43.    On January 21, 2021, Defendant Plante met with Plaintiff and ordered him to cease

assisting other inmates with their legal affairs.

**Deleted:** defendant

**Deleted:** plaintiff

44.    On or about January 21, 2021, McKenney was removed from her supervision over the

OSCI library and stationed at a desk in another ODOC facility.

45.    On or about April 15, 2021, McKenney, following what she described as a four-hour

grilling by ODOC employees that was "brutal," resigned from her ODOC job because she was

forced to "[e]ither resign or lose the [retirement] money match."

FIRST AMENDED COMPLAINT
Page 8 of 20

46.    On August 4, 2021, Plaintiff received a misconduct report that was signed by Defendants

Plante and by Melissa Nofziger that same day.

47.    A true and genuine copy of the August 4, 2021, misconduct report is attached hereto as

this court's record at Docket No. 15, pages 4-6.

48.    The misconduct report alleged Plaintiff had violated four ODOC rules: Compromising an

Employee (4.15); Contraband II (1.11); Unauthorized Use of Information Systems I (1.25); and

Disobedience of an Order I (4.01).

49.    In the misconduct report, Defendant Plante explained that upon receiving an

"anonymous" communication about McKinney, Plaintiff, and "other unauthorized things in the

OSIC library," he conducted an investigation.

50.    In the misconduct report, Defendant Plante explained that he had searched Plaintiff's

assigned work area in the legal library and found a "white plastic child's toy phone" that

McKinney told Plante she had purchased with her own money and gave to Plaintiff without

supervisor approval. For this, Defendant Plante charged Plaintiff with Contraband II (1.11) and

that he engaged in an unauthorized relationship with an employee.

51.    An accurate image of the toy phone is show below:

52.     McKinney placed the child's toy phone on Plaintiff's work desk as a joke, not as a gift,

which Defendant Plante knew but intentionally omitted from his disciplinary report.

| | Deleted: plaintiff's |
| --- | --- |
| | Deleted: defendant |

53.     In the misconduct report, Defendant Plante explained that he "reviewed hundreds of

emails, from January 2020 through January 2021," that McKinney had sent and received from

"individuals at an outside justice resource firm, or attorneys and other professionals," all of

whom were associated with Plaintiff in some manner. "Upon [Defendant Plante's] closer review

of the emails," Plante explained, he discovered that the emails contained "messages and attached

legal documents[.]" Defendant Plante reported that the sending of these emails with attached

legal documents saved Plaintiff "at least $387.40" in copy costs – which constituted, in his view,

a violation of ODOC rule "Disobedience of an Order I.

| | Deleted: defendant |
| --- | --- |
| | Deleted: plaintiff |
| | Deleted: defendant |
| | Deleted: plaintiff |

54.     Defendant Plante stated in his disciplinary report that he had "reviewed a number of legal

calls AIC Wilson had been allowed through the legal library phones," and that "between January

2020 through January 2021, AIC Wilson had been given 146 calls to individuals at the outside

justice resource firm, and he and received an additional 15 calls to five other individuals."

55.     The emails and phone calls that Defendant Plante admits to reviewing and forming the

basis for Plaintiff's rule violation were, among other things, protected attorney client

communications and legal materials sent and received by and through, and with permission from,

McKinney.

| | Deleted: defendant |
| --- | --- |
| | Deleted: plaintiff's |
| | Deleted:  When McKinney brought this to Defendant Plante's attention, he did not care. |

56.     Defendant Plante omits from his misconduct report the fact that prisoners, including legal

assistants, do not have access to telephones or email. Phone calls with legal professionals are

scheduled by McKenny and, when calls are received, she transfers the call to a secure phone.

Similarly, McKenney's work emails are sent and received by her alone.

57.     With respect to rule violation "Unauthorized Use of Information Systems I," Defendant
Plante alleged in the misconduct report that Plaintiff knowingly chose to disregard and violate
ODOC rules by printing a single copy of AIC's legal document from his printer after assisting in
the preparation of the document without charging the AIC for the copy.

58.     With respect to rule violation "Compromising an Employee," Defendant Plante alleged
that Plaintiff "engaged in an unauthorized personal relationship" with McKenney because: (a)
she gave a toy phone to Plaintiff; (b) she directly assisted Plaintiff with his "legal issues, case,
and matters"; (c) she saved him money (at least $387.40) by sending and emailing "legal
documents" to attorneys and other professionals rather than charge him through regular mail; and
(d) because she "admitted to giving [Plaintiff] special privileges which not all AICs were
afforded."

59.     Defendant Plante represented in the misconduct report that he had interviewed McKinney
and "she admitted that her relationships with several individuals at the outside justice resource
firm became more of a personal friendship than a professional relationship." McKinney has
declared that Defendant Plante had used intimidation and bullying tactics—all why threatening
her ability to ever be employed again—to coerce statements out of her. She does not in fact
believe that she was compromised Plaintiff, nor that he broke any rules. She further declares that
hers and Plaintiff's actions were condoned and encouraged by the facility.

60.     Defendant Plante stated in the misconduct report that Plaintiff's "actions were conducted
in the legal library, while he was in his role as a legal assistant."

61.     Each and every alleged rule violation in Defendant Plante's misconduct report occurred
under the supervision, authorization, or direction of McKinney in her role as OSCI legal
coordinator.

**Deleted:** defendant

**Deleted:** plaintiff

**Deleted:** defendant

**Deleted:** plaintiff

**Deleted:** plaintiff

**Deleted:** plaintiff

**Deleted:** plaintiff

**Deleted:** plaintiff's

**Deleted:** defendant

62.    In all the many years and under the five different legal coordinators, Plaintiff has never

been told that his actions and conduct as a legal assistant violated ODOC rules. Indeed, Plaintiff

has received letters of commendation from library coordinators, including McKinney, for his

work.

63.    On or about August 10, 2021, Defendant Foss conducted a disciplinary hearing for

Plaintiff in case number 2103 OSCI 0056 OSCI 35.

64.    On or about August 10, 2021, Plaintiff submitted to Defendant Foss a motion for

polygraph examination and a motion for the introduction of witnesses and testimony pursuant to

the Fourteenth Amendment to the United States Constitution. The motion for witnesses was 47

pages, included 20 witnesses, with proposed questions for each witness. A true copy of that

document is attached to this Complaint.

65.    On August 31, 2021, Defendant Foss denied "AIC's request for witness(es)" on the

ground that "the proffered testimony would not constitute a defense to the charges nor

substantially mitigate the rule violations."

66.    On August 31, 2021, Plaintiff was found guilty of three of the alleged violations -

Contraband II, Compromising an Employee, and Unauthorized Use of Information Systems II -

and given a sanction of 120 days in segregation, the maximum penalty. Plaintiff was found not

guilty of the two other rule violations.

67.    Subsequent to Plaintiff's termination from position as legal assistant, ODOC removed

hundreds of law books and research materials that were used by the legal assistants and inmates

at OSCI over the last two decades.

68.    On September 7, 2021, Plaintiff filed a grievance, numbered OSCI_2021_09_049,

against Defendant and other ODOC officials for retaliatory conduct.

Deleted: plaintiff

Deleted: plaintiff

Deleted: On August 31, 2021, plaintiff

Deleted: plaintiff's

Deleted: plaintiff

Deleted: defendant

69.     On September 14, 2021, OSCI grievance coordinator rejected Plaintiff's grievance on the

grounds that "An AIC may not submit a grievance, regarding misconduct reports, investigations,

lending to or arising from misconduct reports, disciplinary hearings, findings, sanctions."

70.     On September 15, 2021, OSCI Superintendent Josh Highberger approved and signed the

preliminary order, making it a Final Order in Hearing Case Number 2103 OSCI 0056 OSCI 35.

71.     On September 27, 2021, Plaintiff submitted a Petition for Administrative Review

pursuant to OAR 291-105-0085 of the Final Order in Hearing Case Number 2103 OSCI 0056

OSCI 35. Plaintiff submitted a hand-written Petition for Administrative Review by mailing it in a

sealed envelope to the ODOC Inspector General Craig Prins. At the same time, Plaintiff mailed

an identical hand-written copy Petition for Administrative Review to his counsel Julia

Yoshimoto, including a cover letter stating that "[e]nclosed you will find a copy of the

administrative view request that I sent to the Inspector General today" and "[t]his is

administrative review under OAR 291-105-0085 for PLRA exhaustion purposes. Pursuant to

OAR 291-105-0085(10) the Inspector General has 60 days from the date of receipt of this

request to respond." A true copy of Plaintiff's letter (redacted) and Petition for Administrative

Review is in this court's record at Docket No. 19, pages 4-13.

72.     On or about November 27, 2021, Plaintiff had not received a response to his Petition for

Administrative Review, described in the preceding paragraph, within 60 days as required under

OAR 291-105-0085(10).

73.     On or about November 29, 2021, Plaintiff's counsel informed him that the ODOC was

arguing in Defendant Jerry Plante's Response in Opposition to Plaintiff's Motion for Temporary

Restraining Order that "Plaintiff never submitted a petition for administrative review" based on

**Deleted:** plaintiff's

the sworn statement of Jeremy Nofziger, an Assistant Inspector General in the Office of

Inspector General.

74.    To the extent the Inspector General's Office did not receive Plaintiff's timely filed

Petition for Administrative Review, described in the preceding paragraph, it was by

circumstances not in Plaintiff's control, including ODOC officials deliberately destroying his

mail or by other mistake in handing and processing his mail.

75.    ODOC's failure to timely respond to Plaintiff's Petition for Administrative Review of

Final Order in Hearing Case Number 2103 OSCI 0056 OSCI 35, or deliberate or mistaken

actions, described in the previous paragraph, thwarted his ability to take advantage of the

administrative remedy rendering it unavailable.

76.    Plaintiff did not include in this Complaint his claim that Defendant Foss violated his right

to due process because he was under the belief that ODOC's Inspector General was reviewing

his Petition for Administrative Review, described in the preceding paragraph, and intended to

exhaust that administrative remedy to comply with the Prison Litigation Reform Act.

77.    Defendant Prins rendered an opinion on Plaintiff's petition for relief on or about October

28, 2021. Defendant Prins addressed the relief sought in both Plaintiff's petition and counsel for

Plaintiff's petition, but did not identify which document he was referring to. Despite having

ample evidence that Defendants Plante and Foss has issued improper misconduct reports and

made improper disciplinary findings, Defendant Prins denied Plaintiff relief. Defendant Prins has

the authority to rescind both the misconduct report and the disciplinary findings made against

him.

78.    Plaintiff is currently in segregation, suffering an atypical and significant hardship from

the ordinary experience of prison life.

## FIRST CLAIM FOR RELIEF

### (First and Fourteenth Amendment – Retaliation)

79.    Plaintiff realleges paragraphs 1 through 78.

80.    From January 2021 to the present, Defendants personally engaged in and continue to

engage in retaliatory actions against Plaintiff in violation of his First and Fourteenth Amendment

rights.

81.    Defendant Plante has taken adverse actions against Plaintiff, including by not limited to:

(1) reading Plaintiff's confidential legal material; (2) restricting, removing and punishing him for

his work as a legal assistant and for his prisoner advocacy (3) placing him on work restriction

from January 2021 until August 10, 2021; and (6) fabricating evidence and writing a false

misconduct report to charge Plaintiff with disciplinary rule violations.

82.    The adverse acts of Defendant* Plante, alleged in the previous paragraphs, were

intentionally taken because of Plaintiff's work as a legal assistant helping other prisoners on

legal matters, his accessing the court, communication with legal professionals and his counsel by

email and telephone, and his association and communication with the legal and legislative

community as a prison advocate – all of which are protected conduct involving litigation,

advocacy, and political speech.

83.    Defendant Plante's adverse actions have had a chilling effect on Plaintiff's exercise of his

First Amendment rights.

84.    Defendant Plante charged Plaintiff for rule violations for conduct authorized, facilitated,

or done by McKinney in her role as OSCI legal coordinator.

FIRST AMENDED COMPLAINT

| Deleted: __ |
| Deleted: __. |
| Deleted: defendants |
| Deleted: plaintiff |
| Deleted: plaintiff |
| Deleted: plaintiff's |
| Deleted: charging plaintiff with |
| Deleted: defendant |
| Deleted: plaintiff's |
| Deleted: plaintiff's |
| Deleted: plaintiff |

85.    Defendant Plante charged Plaintiff but not other legal assistants and prisoner's at OSCI, even though he knew those individuals were granted similar privileges by McKinney and took similar actions.

86.    Defendant Plante punished Plaintiff because McKinney was friendly and helpful in carrying out her job as OSCI legal coordinator, and specifically for providing Plaintiff access to the courts.

87.    Defendant Plante's adverse actions are inconsistent with the Oregon Way in that he has punished Plaintiff because McKinney normalized the prison environment and treated Plaintiff and other prisoners humanely.

88.    Defendant Plante used the investigative and misconduct system as subterfuge to obscure his intention to retaliate against Plaintiff for his protected conduct.

89.    Defendant Plante's actions against Plaintiff do not reasonably advance a legitimate correctional goal nor were Defendants' actions narrowly tailored enough to achieve such goals, to the extent they exist.

**SECOND CLAIM FOR RELIEF**

**(Fourteenth Amendment – Due Process)**

90.    Plaintiff realleges paragraphs 1 through 89.

91.    The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law.

92.    It is well settled that prisoners are entitled to certain due process protections when subject to disciplinary sanctions that contemplate restraint imposing atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life.

Deleted: plaintiff
Deleted: plaintiff
Deleted: plaintiff
Deleted: plaintiff
Deleted: plaintiff
Deleted: plaintiff
Deleted: plaintiff
Deleted: defendant's
Deleted:

93.     Plaintiff's condition, that is, his restraint, is atypical and significant because as a result of the misconduct proceedings and Final Order finding him guilty of serious misconduct the duration of his confinement will invariably be affected by depriving him of a full reduction in is prison term and by postponing his scheduled release date of January 9, 2025.

94.     Because Plaintiff has a liberty right at stake, he had the right to call witnesses at a disciplinary hearing unless doing so would be inconsistent with institutional safety and correctional goals and the right to marshal the facts and present a defense to the misconduct violations.

95.     Defendant Foss's refusal to call Plaintiff's witnesses at his disciplinary hearing violated his due process rights.

96.     Contrary to Defendant Foss's reason for not calling Plaintiff's witnesses, those witnesses – and specifically McKinney – would have provided evidence refuting Defendant Plante's false statements in the misconduct report and showing that Plaintiff was not guilty of the misconduct violations.

97.     Defendant Foss's refusal to call Plaintiff's witnesses deprived him of the ability to marshal the facts and present a defense to the alleged misconduct violations.

98.     As one example of the favorable evidence that Plaintiff would have been able to present had witnesses been allowed by Defendant Foss is the declaration of Pam McKinney. *See* Dkt. No. 7. That evidence shows the falsity of Defendant Plante's statements in the misconduct report and provides Plaintiff a defense to the alleged misconduct violations.

99.     Plaintiff was deprived of the ability to prepare and present a defense to the allegations against him, a meaningful opportunity to be heard and a fundamentally fair misconduct hearing.

100.   Defendant Foss's Final Order finding Plaintiff guilty of serious misconduct lacked "some evidence" in violation of Plaintiff's right to due process.

101.   Defendant Nofziger had a duty to review the misconduct report to determine if it was accurate, appropriate, and supported by sufficient information. She failed to do that.

102.   Defendant Highberger had a duty upon receiving the preliminary order to evaluate whether one or more the reasons specified in OAR 291-105-0031(5) warranted dismissal or changing the disciplinary sanction(s) or approve and sign the preliminary order.

103.   Defendant Highberger's failure to dismiss the misconduct report or change the sanction in light of the findings and conclusions, given the lack of evidence to support those violations, violated Plaintiff's right to due process.

104.   Defendant Prins has a duty upon receiving a Petition for Administrative Review under OAR 291-105-0085 to review the Final Order to determinate whether (1) there was substantial compliance with OAR 291-105; (2) the findings were based upon preponderance of the evidence; and (3) the sanction was imposed in accordance with the provisions set forth in OAR 291-105.

105.   Defendant Prins has the authority to dismiss or vacate the Final Order or reopen the case made against Plaintiff under OAR 291-105. *See* OAR 291-105-0085(7)

106.   Despite being provided ample evidence of the deficiencies with Defendant Plante's misconduct report and Defendant Foss's Final Order, Defendant Prins did not dismiss or vacate the Final Order or reopen the case.

107.   Defendant Prins' failure to dismiss or vacate the Final Order or reopen the case against Plaintiff, in light of the evidence presented to him, violated Plaintiff's right to due process.

**RELIEF SOUGHT**

FIRST AMENDED COMPLAINT
Page 18 of 20

108.    WEREFORE Plaintiff prays for judgment as follows:

A.    Issue a Declaratory Judgment stating that Defendant Plante retaliated against Plaintiff

> Deleted: plaintiff

in violation of the First and Fourteenth Amendments to the United States

Constitution.

B.    Issue a Declaratory Judgment stating that Defendant Foss denial of due process at

Plaintiff's misconduct hearing violated the Fourteenth Amendment to the United

States Constitution.

C.    Issue a Declaratory Judgment stating that Defendant Prins denial of due process at

Plaintiff's Administrative Review violated the Fourteenth Amendment to the United

States Constitution.

D.    Issue and Injunction ordering Defendants and their agents to immediately:

> Deleted: defendants

1.    Cease engaging in any and all ongoing acts of retaliation against Plaintiff;

> Deleted: plaintiff

2.    Cease engaging in any and all ongoing chilling of Plaintiff's First and Fourteenth

> Deleted: plaintiff's

Amendment rights for the exercise of his protected conduct.

3.    Credit Plaintiff's inmate trust account with the difference in the monetary award

> Deleted: plaintiff's

he would have earned as an Inmate Legal Assistant and the amount of monetary

awards he actually received for each month from January 2021 to the present.

4.    Order Plaintiff's assignment to the OSCI law library as a legal assistant.

> Deleted: plaintiff's

5.    Assign Plaintiff to incentive housing, where he was housed prior to January 20,

> Deleted: plaintiff

2021, in OSCI.

> Deleted:

6.    Vacate or withdraw Defendant Plante's Misconduct Report.

7.    Vacate and dismiss the August 31, 2021, Final Order.

    8.   Order the destruction of any and all false information created by Defendant Plante, described herein, that is in Plaintiff's institutional record or maintained in ODOC's computer systems.

    9.   Order Plaintiff to be fully restored to his institutional status and privileges prior to the violations of Plaintiff's constitutional rights.

E.  Award compensatory damages against Defendants named in their individual capacity.

| Deleted: defendant |
|---|

F.  Award punitive damages against Defendants for an amount to be determined at trial.

| Deleted: defendant |
|---|

G.  Award reasonable costs and attorney fees.

Grant such other relief as this court deems just and equitable.

DATE:  December 8, 2021.

| Deleted: November 4 |
|---|

                 /s/ Juan C. Chavez
                 Juan C. Chavez, OSB #136428
                 Attorney for Plaintiff

                 *LEAD ATTORNEY*

                 /s/ Franz H. Bruggemeier
                 Franz H. Bruggemeier, OSB #163533
                 Attorney for Plaintiff