# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARK WILSON**, | Case No. 6:21-cv-1606-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **JERRY PLANTE, RONNIE FOSS, CRAIG PRINS, JOSH HIGHBERGER, MELISSA NOFZIGER, COLLETTE PETERS, MARIA D. GARCIA, and JOHN DOES 1-10**, | |
| Defendants. | |

Juan C. Chavez, Franz H. Bruggemeir, and Benjamin Wright Haile, OREGON JUSTICE RESOURCE CENTER, PO Box 5248, Portland, OR 97208. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Oregon Attorney General; Shannon M. Vincent and Kenneth C. Crowley, Senior Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Mark Wilson (Wilson), a state prisoner, brings this lawsuit against several

employees of the Oregon Department of Corrections (ODOC) and the Oregon State Correctional

Institution (OSCI). In his Second Amended Complaint and Supplemental Complaint (SAC)

(ECF 49), Wilson asserts four claims under 42 U.S.C. § 1983, alleging violations of his

constitutional rights. As Defendants, Wilson names: (1) Jerry Plante (Plante), an Inspector with ODOC; (2) Ronnie Foss (Foss), a disciplinary hearings officer with ODOC; (3) Craig Prins (Prins), the Inspector General of ODOC; (4) Josh Highberger (Highberger), the Superintendent of OSCI; (5) Melissa Nofziger (Nofziger), an Assistant Inspector General of ODOC; (6) Collette Peters (Peters), the Director of ODOC; and (7) Maria Garcia (Garcia), the legislative and government relations manager of ODOC. Stated generally, Wilson contends that Defendants retaliated against him based on his protected conduct as an "inmate legal assistant" and "prisoner advocate" and his efforts to access the courts in his own case.

Wilson alleges, as his First Claim, brought against Plante and Foss, retaliation in violation of the First and Fourteenth Amendments. As his Second Claim, brought against Foss, Prins, Highberger, and Nofziger, Wilson alleges a violation of due process under the Fourteenth Amendment. As his Third Claim, brought against Peters and Garcia, Wilson alleges retaliation in violation the First and Fourteenth Amendments. Finally, as his Fourth Claim, also brought against Peters and Garcia, Wilson alleges a violation of his right to free expression under the First and Fourteenth Amendments.

Now before the Court is a partial motion to dismiss filed by Plante, Foss, Prins, Highberger, and Nofziger (collectively, the Moving Defendants). The Moving Defendants ask the Court to dismiss Wilson's First and Second Claims in their entirety under *Heck v. Humphrey*, 512 U.S. 477 (1992), or, alternatively, to dismiss Wilson's Second Claim only for Prins, Highberger, and Nogzinger because their alleged conduct does not implicate Wilson's due process rights. The Moving Defendants do not ask the Court to dismiss to dismiss Wilson's Third or Fourth Claims. For the reasons stated below, the Court DENIES the Moving Defendants' partial motion to dismiss.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A court must draw all reasonable inferences in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A court, however, need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Wilson is a state prisoner "adult in custody" (AIC) within ODOC. SAC (ECF 49) at ¶ 26.
Wilson has been incarcerated within ODOC for more than 30 years and is well-known as a
prisoner's rights advocate who writes regularly for the publication *Prison Legal News*,
participates in legislative matters involving prisons and prisoners, and assists other AICs with
their cases. *Id.* ¶ 27. Since February 2012, Wilson has served as an AIC legal assistant in ODOC,
working both on his own case and on the cases of other prisoners. *Id.* ¶¶ 31-33. Most recently, he
was supervised by library coordinator and ODOC employee Pam McKinney (McKinney). *Id.*
¶¶ 31, 36-39. ODOC employee library coordinators supervise legal libraries at ODOC facilities
and provide law librarian services to inmates. *Id.* ¶ 19. Wilson's duties as an AIC legal assistant
included assisting other AICs by drafting motions, affidavits, legal memoranda, petitions,
complaints, letters, appellate briefs, administrative review requests, and prison grievances. *Id.*
¶ 32. On one occasion, McKinney placed a child's toy plastic fake telephone on Wilson's work
desk; she did that "as a joke." *Id.* ¶¶ 63-64.

On January 21, 2021, Plante removed Wilson from his position as an AIC legal assistant
and placed him on work restriction. *Id.* ¶ 44. Plante met with Wilson that day, ordered Wilson to
cease assisting other inmates with their legal affairs, and told Wilson that an investigation had
begun following receipt of an anonymous inmate communication; Plante, however, declined to
tell Wilson any details about the allegations. *Id.* ¶¶ 45-46. On March 4, 2021, Wilson saw Plante
and asked about the status of the investigation. *Id.* ¶ 48. Plante responded that the investigation
was "no big deal" and that it would not take long. *Id.* On March 23, 2021, Plante interviewed
Wilson. *Id.* ¶ 50. During the interview, Plante told Wilson that the only allegation against him
involved a claim that McKinney was helping Wilson sue ODOC. *Id.* ¶ 52. Plante added that he

suspected that McKinney was a "compromised staff member." *Id.* ¶ 53. On or about April 15, 2021, McKinney resigned from her employment with ODOC. *Id.* ¶ 54.

On August 4, 2021, more than three months later, Wilson received a "misconduct report" signed by Plante and Nofziger. *Id.* ¶ 56. In that report, Plante recommended charging Wilson with violating these four ODOC rules: (1) Rule 4.15, Compromising an Employee; (2) Rule 1.11, Contraband II; (3) Rule 1.25, Unauthorized Use of Information Systems I; and (4) Rule 4.01, Disobedience of an Order I. *Id.* ¶ 58. The report identified the date of the violation as March 23, 2021, despite the requirement in Oregon Administrative Rule (OAR) 291-105-0021(2)(a) that an ODOC employee must file a misconduct report "no later than 24 hours after sufficient evidence or information is gathered, discovered, or observed to support a rule violation." *Id.* ¶ 57.

On August 10, 2021, Foss conducted a prison disciplinary hearing in Wilson's case. *Id.* ¶ 84. Before that hearing, Wilson had submitted to Foss a motion asking for investigation and witness testimony, as well as a witness list with proposed questions. *Id.* ¶ 85. Wilson also moved to recuse Jeremy Nofziger as the Hearings Officer because his wife, Melissa Nofziger, was the reviewing supervisor who had approved Plante's misconduct report. *Id.* ¶ 83. Foss granted Wilson's motion to recuse Hearings Officer Jeremy Nofziger. *Id.* ¶ 89.

At the hearing, Foss appeared by video, while Wilson was handcuffed and placed in a locked cage. *Id.* ¶ 87. Wilson's paperwork, including his legal arguments and documentary evidence, were placed out of his reach. *Id.* Foss stated that she had received and reviewed a "Confidential Report," adding that it "supports" the misconduct report. *Id.* ¶ 88. Foss denied Wilson's motion to produce or even disclose the substance of the confidential report. *Id.* ¶ 90.

Wilson explained that he could not defend himself without the investigation and witness testimony that he had requested. *Id.* ¶ 94. Foss said that she had additional questions for the

library coordinators, granted Wilson's motion for a postponement, and postponed the hearing

under OAR 291-105-0064. *Id.* After the hearing, none of Wilson's witnesses were contacted or

questioned relating to the disciplinary proceedings, and none of the library coordinators were

interviewed. *Id.* ¶¶ 96-97.

On August 31, 2021, Foss resumed the hearing. *Id.* ¶ 98. She denied Wilson's request for

witnesses, explaining that "the proffered testimony would not constitute a defense to the charges

nor substantially mitigate the rules violations." *Id.* Foss also stated that both McKinney's

statement and Wilson's statement made to Plante were part of the "Confidential Report," and

Foss informed Wilson, for the first time, that he was accused of Compromising an Employee

because he had accepted photographs, a video, and two thumb drives from McKinney. *Id.*

¶¶ 100, 102-103. Foss also introduced new theories of Wilson's purported guilt on the charges of

Contraband II, *id.* ¶ 105, and Unauthorized Use of Information Systems, *id.* ¶ 106.

Upon the conclusion of the hearing on August 31, 2021, Foss found Wilson guilty of

violating: (1) Rule 4.15, Compromising an Employee; (2) Rule 1.11, Contraband II; and (3) the

lesser included offense of violating Rule 1.26, Unauthorized Use of Information Systems II. *Id.*

¶ 108. Foss found Wilson not guilty of Disobedience of an Order I. *Id.* Foss ordered a Wilson to

serve 120 days in disciplinary segregation (solitary confinement), which was the maximum

penalty, as well as a fine of $100 and a one-year restriction from Vocational Training and

Industries assignments. *Id.*; *see also id.* ¶ 228. Foss prepared her preliminary order on

September 3, 2021. *Id.* ¶ 109.

On September 7, 2021, Wilson filed a grievance against Foss and other ODOC officials

for retaliatory conduct. *Id.* ¶ 114. A grievance coordinator rejected Wilson's grievance on

September 14, 2021, concluding that "[a]n AIC may not submit a grievance, regarding

misconduct reports, investigations, lending to or arising from misconduct reports, disciplinary hearings, findings, and sanctions." *Id.* ¶ 115. On September 16, 2021, Highberger approved and signed Foss's preliminary order, making it a Final Order. *Id.* ¶ 116.

On September 27, 2021, Wilson submitted a Petition for Administrative Review of the Final Order, which he sent by mail to Prins. *Id.* ¶ 118. Wilson also mailed a copy to his lawyer. *Id.* By November 27, 2021, Wilson had not received a response to his Petition. *Id.* ¶ 119. On November 29, 2021, Wilson's lawyer informed Wilson that ODOC contended that Wilson never submitted the required Petition for Administrative Review. *Id.* ¶ 120.

Wilson commenced this lawsuit on November 4, 2021. Originally, Wilson sued only one named Defendant, Plante, and asserted only a single claim of retaliation. Compl. (ECF 1), at ¶¶ 5-6, 64-74. On November 3, 2021, Wilson moved for a Temporary Restraining Order (TRO), seeking release from his sanction of 120 days in solitary confinement, among other relief. ECF 3.

After holding a hearing, the Court denied Wilson's motion for TRO on December 7, 2021. ECF 24. The Court explained:

> The Court finds that the relief Wilson requests here—to reverse the disciplinary findings, release Wilson from segregation, and return him to incentive housing—cannot be done by Plante, who is the only named Defendant in this lawsuit. Plante is an inspector in the Special Investigations Unit, with authority to conduct investigations. There is no record evidence that Plante has the legal authority or ability—and Wilson fails sufficiently to show that Plante does have the authority or ability—to bring about the relief that Wilson requests. . . . The Court will not order injunctive relief that cannot be effectuated—to do so would render the TRO an improper advisory opinion. . . . In the absence of a named defendant with the legal authority or ability to carry out the relief that Wilson requests, the Court must deny Wilson's motion for TRO, even assuming that Wilson could satisfy the four factors under *Winter*.

*Id.* at pp. 18-19.

Wilson filed an amended complaint (ECF 29), and then the SAC (ECF 49), which is the operative pleading. As noted, Wilson added claims and additional defendants. The Moving Defendants then filed their partial motion to dismiss. ECF 51.

## DISCUSSION

The Moving Defendants move to dismiss both Wilson's First and Second Claims in their entirety under *Heck*. In the alternative, the Moving Defendants move to dismiss Wilson's Second Claim related to only Prins, Highberger, and Nofziger.

### A.  Whether Wilson's First and Second Claims Are *Heck*-Barred

The Moving Defendants argue that Wilson's First and Second Claims, alleging retaliation and due process violations respectively, are barred under *Heck* and related cases. The question raised in the motion to dismiss essentially is whether Wilson has an justiciable claim under 42 U.S.C. § 1983.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871 . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). The Supreme Court in *Heck* established the "favorable termination" requirement for prisoner § 1983 claims—namely, "that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad*, 540 U.S. at 751 (citing *Heck*, 512 U.S. 477).

The Supreme Court later expanded the favorable termination requirement to apply to when a prison takes administrative action against a prisoner that could affect a prisoner's good time credits towards release. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *see id.* at 646 ("The principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits."). Despite this expansion recognized in *Edwards*, *Heck* and the favorable termination rule do not "appl[y] categorically to all suits challenging prison disciplinary proceedings." *Muhammad*, 540 U.S. at 754. Rather, the operative question in considering whether a prisoner's § 1983 claim is adjudicable is whether the disposition of the claim would "affect the duration of time to be served." *Id.* Whether a prison disciplinary action will affect the duration of time to be served is generally a matter of state law or regulation. *Id.* ("The effect of disciplinary proceedings on good-time credits is a matter of state law or regulation.").

The Supreme Court has recognized that certain lawsuits may ultimately have an effect on the duration of time served but may not require immediate release from confinement or even a shorter stay in prison. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). In *Wilkinson*, the Court considered the consolidated cases of plaintiffs Dotson and Johnson who sought, respectively, "relief that [would] render invalid the state procedures used to deny parole eligibility . . . and parole suitability." *Id.* The Court concluded that:

> Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.

*Id.* (emphasis in original). Invalidating the challenged procedures, the Court concluded, would not *require* the release of either of the plaintiffs, but would only entitle the plaintiffs to additional

procedures that *might* ultimately result in their speedier release—and thus neither claim "lies at the core of habeas corpus" such that they would be *Heck*-barred. *Id.* Conditions of confinement—rightfully the province of § 1983 claims—might be considered part of a prisoner's "sentence," but the Court in *Edwards* did *not* hold that "the prisoner's suit [was] *Heck*-barred because it sought nullification of the disciplinary procedures *but rather* because nullification of the disciplinary procedures would lead *necessarily* to restoration of good-time credits and hence the shortening of the prisoner's sentence." *Id.* at 84 (emphases added).

When a district court dismisses a habeas petition or a prisoner complaint asserting a claim under § 1983, those decisions are typically reviewed by the Ninth Circuit for what is referred to as "*Wilkinson* issues." The Ninth Circuit has often cited *Wilkinson* in memorandum dispositions when determining whether a district court properly dismissed a prisoner's case either because the prisoner brought a § 1983 claim that should have been filed as a habeas petition or vice versa. As directed by *Wilkinson*, the Ninth Circuit has affirmed trial courts' dismissals of § 1983 claims that necessarily impact the length of a prisoner's sentence and thus are the within the "core" of habeas.[1] *See, e.g.*, *Edwards v. Dzurenda*, 797 F. App'x 369, 370 (9th Cir. 2020) (affirming dismissal of action alleging miscalculation of the plaintiff's parole eligibility date); *Johnson v. Lizarraga*, 768 F. App'x 690, 691 (9th Cir. 2019) (affirming dismissal of § 1983 claims challenging prior parole suitability decisions); *Manny v. Kirkegard*, 738 F. App'x 541 (9th Cir. 2018) (same); *Williams v. Schwarzenegger*, 399 F. App'x 286, 287 (9th Cir. 2010) (same); *Rimer v. Sandoval*, 692 F. App'x 879, 880 (9th Cir. 2017) (affirming dismissal of claims challenging denial of parole); *Soto v. Garner*, 671 F. App'x 960, 961 (9th Cir. 2016) (same); *McCune v.*

---

[1] Unpublished Ninth Circuit decisions issued on or after January 1, 2007, may be cited. U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R.App. P. 32.1(a).

*Legrand*, 657 F. App'x 724, 725 (9th Cir. 2016) (same);. The Ninth Circuit also has affirmed the dismissal of § 1983 claims relating to disciplinary hearings, where the action would implicate the "loss of time credits." *Thompson v. Hernandez*, 606 F. App'x 384, 385 (9th Cir. 2015); *see also Reece v. Dickenson*, 594 F. App'x 398, 399 (9th Cir. 2015) (same); *Zepeda v. Peterson*, 588 F. App'x 689, 690 (9th Cir. 2014) (same); *Cervantes v. Pratt*, 224 F. App'x 697, 700 (9th Cir. 2007) (same); *Torres v. Costa*, 249 F. App'x 516, 517 (9th Cir. 2007) (affirming dismissal of action challenging the Review Board's refusal to grant sentence credit).

On the other hand, the Ninth Circuit has affirmed district courts' dismissals of habeas claims when the "potential consequences of [the plaintiff's] misconduct violations [were] too speculative to establish habeas corpus jurisdiction" but noted that such plaintiffs are not barred from bringing a claim under § 1983 on the same basis. *See, e.g.*, *Richardson v. Yates*, 435 F. App'x 625, 626-27 (9th Cir. 2011). The Ninth Circuit also has reversed dismissals of § 1983 claims, for example, when the plaintiff asserts an "access to the courts claim," concluding that such a claim does not necessarily implicate the invalidity of the plaintiff's conviction. *See, e.g.*, *Daily v. Prosper*, 465 F. App'x 671 (9th Cir. 2012). In actions in which the claims are mixed, the Ninth Circuit has affirmed in part and reversed in part, permitting the lawsuit to go forward only on certain claims. For example, in *Cox v. Clark*, the Ninth Circuit affirmed the district court's dismissal of a plaintiff's due process claim "to the extent [the plaintiff] sought restoration of good-time credits and reversal of the disciplinary decision," as barred by *Edwards*, but concluded that the plaintiff's "claim for damages based on the failure to provide advanced notice of the claimed disciplinary violation [was] not barred by *Edwards*, because a decision in [the plaintiff's] favor would not necessarily imply the invalidity of the deprivation of the good-time credits." 321 F. App'x 673, 676 (9th Cir. 2009).

These unpublished memorandum dispositions are not binding precedent. *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000). They may, however, have persuasive value in explaining how the Ninth Circuit applies binding authority. *See Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019) ("[M]emorandum dispositions do not establish law. They are, at best, persuasive authority." (footnote omitted)). The sheer breadth and consistency of memorandum dispositions that the Ninth Circuit has issued applying *Heck*, *Edwards*, and *Wilkinson*, however, are reliable indicators of how the Ninth Circuit applies those binding precedents. These memorandum dispositions show that the Ninth Circuit carefully parses a prisoner's § 1983 claims to determine which are within the "core" of habeas and thus should be dismissed, and which may proceed because the prisoner's success would not necessarily result in release or a shorter sentence.

In his SAC, Wilson seeks declaratory and injunctive relief, money damages, costs, and attorney fees. Wilson requests a declaration that: (1) Plante retaliated against Wilson in violation of Wilson's rights under the First and Fourteenth Amendments; (2) Foss, Highberger, and Nofziger denied Wilson his due process rights under the Fourteenth Amendment during the misconduct proceedings; and (3) Prins denied Wilson his due process rights during the Administrative Review. SAC at pp. 52-53. Wilson also requests as injunctive relief an order that Defendants: (1) cease retaliating against Wilson; (2) cease chilling Wilson's First and Fourteenth Amendment rights; (3) credit Wilson's inmate trust account with the amount of money that he would have earned had he been allowed to retain his position as an Inmate Legal Assistant; (4) cease from requiring Wilson to pay fines associated with the disciplinary proceedings; (5) order Wilson's return and reassignment back to the law library as an Inmate Legal Assistant; (6) order Wilson's return and reassignment back to incentive housing; (7) vacate or withdraw

Plante's misconduct report; (8) vacate and dismiss the August 31, 2021, Final Order; (9) order

the destruction of false information created by Plante that was included in Wilson's institutional

record; and (10) order that Wilson be fully restored to his institutional status and privileges.

*Id.* at pp. 53-54.

In their argument under *Heck*, the Moving Defendants make much of a single paragraph

found in Wilson's SAC. Wilson alleges:

> Plaintiff's condition, that is, his restraint, is atypical and significant
> because, as a result of the misconduct proceedings and Final Order
> finding him guilty of serious misconduct, the duration of his
> confinement will invariably be affected by depriving him of a full
> reduction in [h]is prison term and by postponing his scheduled
> release date of January 9, 2025, when that date arrives.

*Id.* ¶ 236. In focusing on this paragraph, the Moving Defendants ignore that the inquiry under

*Heck* and other Supreme Court precedent is about the nature of the relief requested and what the

plaintiff's success would mean, as a practical matter, for the plaintiff's potential release. *See*

*Wilkinson*, 544 U.S. at 81-82. As Wilson acknowledges—and the Moving Defendants do not

dispute—Wilson is not eligible for "earned time credits" under Oregon law because of the date

of his crime. *See* Or. Rev. Stat. § 421.121(1) ("[E]ach adult in custody sentenced to the custody

of the Department of Corrections for felonies committed on or after November 1, 1989, is

eligible for a reduction in the term of incarceration . . . ."). In their reply, the Moving Defendants

concede and agree that Wilson did not lose any earned-time credits based on the disciplinary

proceedings that he challenges in this lawsuit, but they argue that Wilson's claims "implicate the

duration of his confinement because of the way that he pleads them." ECF 53, at 2 (citing SAC

¶ 236).

The Moving Defendants are mistaken. Wilson's claims here are more analogous to the

plaintiffs' claims that the Supreme Court allowed in *Wilkinson* than the plaintiff's claims in

*Edwards* that the Supreme Court found not cognizable under § 1983. Unlike the plaintiff in *Edwards*, who challenged the validity of the procedures used to deprive him of good-time credits, 520 U.S. at 643, and like the two plaintiffs in *Wilkinson*, Wilson does not seek "an injunction ordering his immediate or speedier release into the community." 544 U.S. at 82. Rather, any success on Wilson's claims will at most impact what the appropriate authorities consider about Wilson's scheduled parole release date of January 9, 2025. Like one of the plaintiffs in *Wilkinson*, success for Wilson here means that the appropriate authorities "may, in their discretion, decline to shorten his prison term." *Id.* Although the Moving Defendants are correct that Wilson *alleges* in his SAC that the disciplinary hearing *will* deprive him of a full reduction in his prison term, "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation," *Muhammad*, 540 U.S. at 754, and neither party identifies any state law or regulation that mandates any particular result about Wilson's sentence based on this disciplinary proceeding or the results of this lawsuit.

Wilson has not, during this litigation, ever argued that he is entitled to an earlier release date from incarceration than his scheduled release date of January 9, 2025. He has not asked the Court to order a "speedier" release. None of the relief that Wilson requests would entitle him to a release date earlier than January 9, 2025. Like in *Wilkinson*, Wilson's success here, at most, means a change in what the appropriate authorities will consider in assessing his scheduled release date. One paragraph in a complaint alleging that there will be some effect on a plaintiff's scheduled release date, absent some state law or regulation requiring such a result, does not bar a plaintiff's § 1983 claim under *Heck*. The Court therefore denies the Moving Defendants' motion to the extent that they contend that Wilson's claims are *Heck*-barred.

**B. Whether Wilson's Second Claim States a Due Process Violation**

As his Second Claim, Wilson alleges that Foss, Prins, Nofziger, and Highberger violated Wilson's due process rights when they failed to adhere to various requirements imposed by Oregon regulations for prison disciplinary procedures. SAC ¶¶ 229-250. Prins, Nofziger, and Highberger (but not Foss) move to dismiss Wilson's Second Claim, even if it is not *Heck*-barred. Here, these Defendants make two arguments. First, they contend that Wilson has not alleged that they engaged in any conduct that implicated his due process rights. Second, they argue that Wilson has not adequately stated a claim for supervisory liability under § 1983. The Court begins with the Moving Defendants' second argument.

**1. Supervisory Liability**

The Moving Defendants characterize Wilson's claims against Prins, Nofziger, and Highberger as alleging only supervisory liability. The Moving Defendants, however, mischaracterize Wilson's allegations against them in the Second Claim. Rather than allege supervisory liability, Wilson alleges that, at each stage of the disciplinary review process, each named Defendant independently took actions that violated Wilson's right to due process. He does not allege that Prins, Nofziger, and Highberger merely "ratified" Foss's alleged due process violations.

The Moving Defendants cite *Chavez v. Peters*, in which the plaintiff sued four employees of ODOC—one of whom was a hearings officer who conducted the disciplinary hearing at issue in that lawsuit. 2019 WL 922237 (D. Or. Feb. 25, 2019). The plaintiff alleged that all four defendants impermissibly refused the plaintiff's request to call witnesses on his behalf, that all the defendants systematically suppressed evidence that supported the plaintiff, that all of the defendants failed to provide adequate assistance to the plaintiff in collecting evidence, and that the approving officers failed to provide the plaintiff with an impartial disciplinary hearing

committee. *Id.* at *2. In ruling on a motion for summary judgment, the district court found that the plaintiff had presented a genuine issue of material fact on only one of his claims: the defendants' refusal to call witnesses at the disciplinary hearing. *Id.* at *5-6. The court further found that only the defendant hearings officer personally participated in that alleged constitutional violation. Accordingly, the court dismissed the other defendants. *Id.* at *8.

Wilson does not contend that Prins, Nofziger, and Highberger are liable as supervisors of Foss's failures to provide due process during the disciplinary hearing. Rather, Wilson alleges that Prins, Nofziger, and Highberger each independently violated Wilson's due process rights when, at the various stages, those Defendants failed to fulfill their own individual duties, as mandated by applicable administrative rules, to evaluate the evidence supporting the charges against Wilson. Unlike the plaintiff in *Chavez*, Wilson does not claim that Prins, Nofziger, and Highberger are liable for Foss's refusal to allow Wilson to present witnesses in his own defense or for other alleged violations by Foss that occurred during the hearing. Although Wilson alleges that *Foss* violated Wilson's rights in various ways during the hearing, Wilson also alleges that Prins, Nofziger, and Highberger violated Wilson's rights in ways not dependent on Foss's alleged violations during the hearing. Wilson alleges that Prins, Nofziger, and Highberger took disciplinary actions against Wilson, despite a lack of evidence to support those actions. Thus, to the extent that the pending partial motion to dismiss seeks dismissal based on an argument of supervisory liability, the motion is denied.

### 2.  Sufficiency of Allegations

The Due Process Clause affords prisoners protection against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). The Due

Process Clause alone does not confer a liberty interest in freedom from the conditions or degree

of confinement ordinarily contemplated by a prison sentence. *See Hewitt v. Helms*, 459 U.S. 460,

466-68 (1983). State regulatory schemes, on the other hand, may create liberty interests in

"freedom from restraint which, while not exceeding the sentence in such an unexpected manner

as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin*, 515 U.S. at 484 (citations omitted). The mere presence, however, of mandatory

language in a state regulatory scheme does not by itself create a protected liberty interest. *Id.*

at 483-84. Similarly, a failure to follow a rule does not constitute a due process violation. *Walker*

*v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds, Sandin*, 515 U.S.

at 483-84.

Rather than relying on a single indicator of atypical and significant hardship, courts

conduct a "case by case, fact by fact" analysis of the "condition or combination of conditions or

factors" that the plaintiff experienced. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)

(citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). Although the significance of the

hardship is a case-by-case determination, courts look to certain "guideposts," including:

> 1) whether the challenged condition 'mirrored those conditions
> imposed upon inmates in administrative segregation and protective
> custody,' and thus comported with the prison's discretionary
> authority; 2) the duration of the condition, and the degree of
> restraint imposed; and 3) whether the state's action will invariably
> affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). If an inmate has a protected

liberty interest or "[i]f the hardship is sufficiently significant, then the court must determine

whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d

at 860.

The procedures required before a prisoner may be deprived of a protected liberty interest or made to endure a significant hardship include the following: (1) written notice of charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).

Wilson alleges that his administrative disciplinary conviction was unsupported by the evidence, and at various stages through the process, Prins, Nofziger, and Highberger did not meet their obligation to review the proceedings to determine whether the allegations were supported by sufficient evidence. Wilson alleges that Prins failed to conduct an adequate, non-discretionary review of a final order, as required by OAR 291-105-0085. SAC ¶¶ 247-250. Wilson also alleges that Nofziger did not adequately review the misconduct report, as required by OAR 291-105-0021. *Id.* ¶ 244.[2] Finally, Wilson alleges that Highberger failed to evaluate the preliminary order and misconduct report, as required by OAR 291-105-0031(5). *Id.* ¶¶ 245-246.

The Ninth Circuit has held that "the minimum requirements of procedural due process require that the findings of the prison disciplinary board be supported by some evidence in the record." *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (cleaned up) (citing *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). The Ninth Circuit in *Burnsworth*, considered the Supreme Court's holding in *Hill* that "revocation of good time does not comport

---

[2] Wilson does not cite a specific administrative rule in the SAC for his due process claim against Nofziger, but the briefing from both Wilson and the Moving Defendants on the pending motion treat that claim as relying on OAR 291-105-0021.

with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." 472 U.S. at 454 (cleaned up).

The plaintiff in *Burnsworth* was an inmate in an Arizona state prison who had been convicted of the disciplinary infraction of escape through the administrative disciplinary process. 179 F.3d at 772. The prisoner alleged his conviction lacked sufficient evidence and brought due process and retaliation claims. *Id.* at 772-73. The district court first granted summary judgment in favor of the prisoner on his due process claim, finding that there was *no* evidence supporting the prison's disciplinary escape conviction and thus the hearing violated the prisoner's constitutional rights. *Id.* at 773. The district court then reconsidered, granting summary judgment on that claim in favor of the defendants after concluding that the prisoner did not show that he had a protected liberty interest. *Id.*

On appeal, the Ninth Circuit noted that the defendants did "not argue that plaintiff *was* afforded a fair hearing," but asserted that the plaintiff could not "be heard to complain that his disciplinary process violated due process because he ha[d] not demonstrated the existence of a 'liberty interest' as required by the [Supreme] Court in *Sandin*." *Id.* at 774. The essence, the Ninth Circuit described, of the defendants' argument was "that inmates must demonstrate the existence of a liberty interest before they can argue that they are entitled to procedural due process." *Id.* The Ninth Circuit disagreed with the defendants, holding that a prisoner's right to avoid arbitrary punishments means that the action of the prison disciplinary board must have been supported by *some* evidence, even without any protected liberty interest. *Id.* at 775. In so holding, the Ninth Circuit provided examples, including that due process requires some evidence before revoking good time credits, for convictions in general, and in clemency proceedings. *Id.* at 774-75.

Regarding the latter, the Ninth Circuit emphasized that, while "it is well-established that prisoners have no liberty interest in clemency proceedings because the decision to grant or deny clemency rests wholly in the discretion of the executive . . . a majority of the justices of the Supreme Court nonetheless believe that some minimal procedural safeguards apply to clemency proceedings." *Id.* at 775. The court continued, explaining that "the concept that once the state conducts a hearing it must be a fair one is not limited to the clemency context" and that "the fundamental principle of due process in prison disciplinary hearings—'the minimum requirements of procedural due process' require that 'the findings of the prison disciplinary board [be] supported by some evidence in the record.'" *Id.* (quoting *Hill*, 472 U.S. at 454-55) (alteration added in *Burnsworth*).

Wilson alleges that his "disciplinary charge is completely unsupported by evidence." SAC ¶ 235. He alleges that Nofziger failed to ensure that the misconduct report was supported by sufficient evidence. *Id.* ¶ 244. Wilson also alleges that Prins and Highberger failed to dismiss or vacate the final order even though it was not supported by sufficient evidence. *Id.* ¶¶ 245-250. Although Wilson points to specific rules requiring that ODOC employees follow certain procedures in issuing misconduct reports, in reviewing those reports, and in entering final orders pursuant to those reports, his claim, at its core, is that the actions taken by these Defendants were not supported by evidence. *See id.* ¶ 243 ("Defendant Foss's Final Order finding Plaintiff guilty of serious misconduct lacked 'some evidence,' in violation of Plaintiff's right to due process."). Under the facts alleged in this case, Plaintiff's allegations are plausible. Thus, the Court need not engage in any further analysis of the liberty interests afforded by the cited administrative rules because, on the face of his claim, Wilson has adequately alleged that his due process rights were violated by the Moving Defendants when they participated in the disciplinary action and related

proceedings against Wilson without "some evidence." *Burnsworth*, 179 F.3d at 775. Thus, the Court denies the partial motion to dismiss filed by Nofziger, Prins, and Highberger.

## CONCLUSION

The Court DENIES Defendants' Partial Motion to Dismiss (ECF 51).

**IT IS SO ORDERED**.

DATED this 7th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge