**Juan C. Chavez**, OSB #136428
jchavez@ojrc.info
**Benjamin Haile**, OSB #040660
bhaile@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, Oregon 97208
Telephone: 503-944-2270

      Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARK WILSON, | ) |
| | ) Case No. 6:21-cv-01606-SI |
| Plaintiff, | ) |
| | ) |
| vs. | ) IDENTIFICATION OF ARGUMENTS AND |
| | ) SUMMARY OF UNDISPUTED FACTS |
| JERRY PLANTE, RONNIE FOSS, JOSHUA | ) ASSERTED IN PLAINTIFF'S PROPOSED |
| HIGHBERGER, CRAIG PRINS, MELISSA | ) MOTION FOR PARTIAL SUMMARY |
| NOFZIGER, COLETTE PETERS, MARIE | ) JUDGMENT ON HIS SECOND CLAIM |
| GARCIA and JOHN DOES 1-10, | ) FOR RELIEF. |
| | ) |
| | ) |
| Defendants. | ) |

**INTRODUCTION**

Plaintiff will move for summary judgment on his second claim for relief, arguing that a sanction of 120 days in disciplinary solitary confinement violated procedural due process protections.  Violations included failing to provide adequate prehearing notice of the charges, denying every question to every witness that Plaintiff asked for, preventing him from accessing papers he had brought with him to the hearing, and convicting him without evidence.

Plaintiff has moved for leave to file a brief of up to 194 pages.  ECF #80.  The

Court directed Plaintiff to file this brief of not more than 15 pages identifying (1) the

arguments that Plaintiff intends to assert and (2) a summary of the undisputed facts that

Plaintiff contends must be decided in Plaintiff's favor for Plaintiff to prevail.  ECF #81.

Mark Wilson was Oregon's most well-respected inmate legal assistant.  For over

30 years he helped fellow prisoners access the courts.  He has written and spoken against

various Oregon Department of Corrections' (ODOC) practices that violate civil rights.

This case is about ODOC officials' creation of false and pretextual narratives to punish

him without due process for the work he has done over the years on behalf of other

prisoners.

## IDENTIFICATION OF ARGUMENTS

### I.  None of the Evidence Supported the Convictions

Plaintiff argues first that there was no evidence on which to convict him of each

of the disciplinary rule violations.  Discipline based upon no evidence is a due process

violation per se.  A prisoner need not demonstrate that it also resulted in an atypical and

significant hardship or a deprivation of a cognizable liberty interest. *Burnsworth v.*

*Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999).

Plaintiff was convicted of Compromising an Employee and sanctioned with 120

days in disciplinary solitary confinement.  He was convicted of two additional offenses,

Unlawful Use of Information Systems II and Contraband II.  The presumptive sanctions

for these were 14 days each.  These merged with the 120 day sanction.

Convictions for each of these charges requires evidence of conduct or possession of items that was unauthorized or prohibited. The charges were based on possession of a white plastic child's toy phone and Plaintiff's conduct while he worked as a legal assistant in the library. His supervisor, library coordinator Pam McKinney authorized his possession of the phone and his conduct as a legal assistant.

The charge of compromising an employee required evidence that Plaintiff knowingly engaged McKinney in a personal relationship. Personal relationship is undefined, but must refer to an interaction outside the scope of Plaintiff's working relationship with McKinney as an inmate legal assistant under her supervision as a law library coordinator. There is no evidence that Plaintiff's conduct with McKinney strayed outside of his work as an inmate legal assistant, much less that he knew it had.

## II. The Sanction Was an Atypical and Significant Hardship

When discipline deprives a prisoner of a constitutionally protected liberty interest, minimal due process protections apply. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963 (1974). A prisoner is deprived of a liberty interest when conditions of discipline impose an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Sandin v. Connor*, 515 U.S. 472, 115 S.Ct. 2293 (1995). Plaintiff contrasts the conditions in the disciplinary solitary confinement where he spent 120 days with the conditions in general population and administrative segregation.

A vast amount of research over several decades consistently and unequivocally demonstrates that prolonged solitary confinement inflicts profound and enduring physiological and psychological harm on all people, not only vulnerable populations.

Neuroimaging shows that the isolation causes lasting damage to the structure of the brain. Psychological research shows that it causes acute mental health problems and a high risk of prolonged mental illness. The gravity of the harm increases with the length of the isolation. National and international standards condemn solitary confinement longer than 15 days and recognize that it is torture. Many states have chosen more effective, less harmful alternatives.

ODOC has begun to acknowledge the devastating harm wrought by prolonged confinement in its disciplinary segregation units. Effective January 1, 2023, ODOC implemented a temporary rule change capping the presumptive sanction for the most serious offenses at 60 days and mandating that "In no case shall an AIC [Adult in Custody] be retained on disciplinary segregation status for a period in excess of 90 consecutive days."

On March 14, 2023, Associate Director Rob Persson provided written testimony to the legislature on behalf of ODOC acknowledging the harmfulness of prolonged solitary confinement and describing ODOC's efforts to reduce the use of this sanction. He wrote, "We are aware of the work that the Association of State Corrections Administrators (ASCA), the United Nations, the American Correctional Association (ACA), the National Commission on Correctional Health Care (NCCHC), and others have done in the last decade to make the negative impacts of long-term solitary confinement known." He said that in the first quarter of 2023 ODOC had lowered the average length of stay in disciplinary solitary confinement to 44 days.

Next, Plaintiff presents facts he believes to be beyond dispute about the contrast between specific conditions in general population and the disciplinary segregation unit at

Oregon State Correctional Institution.  These show that Plaintiff suffered a "major

disruption in his environment" that constituted an atypical and significant hardship.

*Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir. 2003).

Contrasts included loss of access to graduate-level college classes, employment,

social contact with other prisoners, telephone and video contact with his family, choices

about clothing, hygiene products and food, and most forms of exercise.  He was confined

for over 23 hours per day to an 8' x 8' cell.  Recreation consisted of the opportunity to go

to a cage smaller than his cell with nothing but a pull-up bar for 30 minutes.  He was

allowed to shower for ten minutes three times per week.

### III. The Disciplinary Procedure violated due process.

After establishing deprivation of a substantial liberty interest, Plaintiff explains in

detail a series of due process violations that led to the deprivation.

### A.  Lack of Notice

Due process violations began with inadequate notice of the charges.  On August

4, 2021, Defendant Jerry Plante, an inspector in the ODOC Special Investigation Unit,

filed a misconduct report with charges.  Deficiencies in that report included conclusory

allegations from which Plaintiff could not discern the basis of the alleged violations.

Plante wrote, ""AIC WILSON knowingly engaged in an unauthorized personal

relationship with an employee, therefore, violating the rule (4.15) Compromising an

Employee".  Plante failed to explain how Plaintiff engaged McKinney in a personal

relationship.  Plante alleged misconduct by McKinney without indicating how it could

show Plaintiff's guilt.  For example, he wrote that McKinney admitted to giving Plaintiff

the toy phone and assisting him with legal matters.  Plante also specified the wrong date

for the alleged misconduct, a date when Plaintiff and McKinney no longer worked in the

library or had any contact.


### B.  Denial of Witnesses

Violations continued when Defendant Ronnie Foss held disciplinary hearings on

August 10 and 31, 2021.

As Justice Thurgood Marshall recognized in *Wolff*, "[f]ew rights are more

fundamental than that of the accused to present witnesses in his own defense." 418 U.S.,

at 583 (Justice Marshall concurring).  "[T]he testimony of inmates or staff members will,

in most cases, be the most relevant evidence a prisoner could offer in his defense."

*Bartholomew v. Watson*, 664 F2d 915, 918 (9th Cir. 1982).  The hearings officer's denial

of a prisoner's proposed witnesses requires an individualized determination with respect

to each requested witness.  *Ponte v. Real*, 471 U.S. 491, 496, 105 S.Ct. 2192 (1985)

("Nor do we agree with [prison officials] that 'across-the-board' policies denying witness

requests are invariably proper.").

Plaintiff submitted a list of 20 requested witnesses and 510 proposed questions to

be asked of those witnesses.  He took care to demonstrate the relevance of each witness

to his defense by organizing proposed questions by topic and sorting within each topic by

witness.  Plaintiff even included a table of contents.  Foss refused to ask any of Plaintiff's

proposed questions.  She refused to call any of the witnesses to testify at a hearing.  Nor

did she take the opportunity to question any of them during a 21 day recess between the

first and second disciplinary hearing, except for one former library coordinator.  Even

with that witness, Foss did not ask any of the questions requested by Plaintiff.

Foss' refusal to question any of the AIC witnesses Plaintiff had requested is

particularly indicative of her disregard for due process.  She stated, "I'm not talking to

other AICs because I have plenty of staff to talk to."

Plaintiff proposed 137 questions for McKinney, organized within nine topic

areas.  Foss stated simply, "I don't see why I would talk to Ms. McKinney when I have

her statement in the confidential packet."

Notably, Foss did not base her denial of witnesses on a threat to safety or security.


### C.  Denial of Documents

"An opportunity to present documentary evidence, except in exceptional

circumstances, is constitutionally required."  *Bartholomew,* 477 F.Supp. at 277.

Plaintiff brought documents to the hearings containing evidence and legal

argument in a 10" x 13" envelope.  When he arrived at the hearings room, a guard took

the envelope, handcuffed Plaintiff behind the back, locked him in a small cage, and

ordered him to sit on a small stool in front of a computer monitor.  Foss conducted the

hearing remotely.  The guard placed the envelope full of documents on a desk outside the

cage where Plaintiff was not able to access it.  This deprived Plaintiff of the ability to

present evidence and impaired his ability to present argument.

### D.  Additional Due Process Violations

Plaintiff also argues that Plante and/or Foss deprived him of due process by choosing to omit exculpatory evidence from the misconduct report, denying a meaningful opportunity to be heard, denial of a neutral adjudicator, denial of access to even a summary of information withheld as confidential, conviction for uncharged conduct, and inaccurately finding that UUIS II was a lesser included offense of UUIS I as charged.

### E.  Due Process Violations were Condoned by Highberger and Prins

Defendants Nofziger, Highberger, and Prins, the ODOC Assistant Inspector General and Plante's supervisor, the superintendent of OSCI, and the Inspector General of ODOC, respectively, deprived Plaintiff of due process by personally and independently endorsing and condoning the violations by Plante and Foss.

## SUMMARY OF UNDISPUTED FACTS

Plaintiff relies on facts which are either established by documents or which Plaintiff believes that the defendants will not dispute.

### I.  Lack of Evidence

In support of his argument that there was no evidence with which to convict him, Plaintiff relies on the records of the investigation and discipline, including the misconduct report prepared by Plante, transcripts of Plante's interviews, the transcript of the disciplinary hearing and the written findings by Foss.  Plaintiff contends that these documents show:

- Plaintiff was disciplined entirely for conduct authorized by McKinney;

- There was no evidence Plaintiff knew or should have known that she lacked authority to do so;

- None of the evidence showed that their relationship extended outside of an appropriate professional context of working in a prison law library to provide of legal services to AICs.

- There is no evidence that Plaintiff created a threat to the safety or security of the institution;

- The white child's plastic toy phone that Plante seized from Plaintiff's desk was placed there by McKinney;

- The toy phone had remained in plain view on his desk for more than a year; and

- In the misconduct report, Plante stated an inaccurate date for the alleged misconduct, a date significantly after all events that form the subject matter for the accusations.

## II.  The Sanction Was an Atypical and Significant Hardship

To support his argument that 120 days of solitary confinement was an atypical and significant hardship that infringed on a protected liberty interest, plaintiff contends:

- The conditions in the DSU at OSCI were very distinct from ordinary prison life and administrative segregation;

- The conditions in DSU at OSCI were harmful to Plaintiff's physical and mental health;

- They violated national and international standards for humane treatment of prisoners, including the Standard Minimum Rules for the Treatment of Prisoners, unanimously adopted by the UN General Assembly in 2015, which it also called the Nelson Mandela Rules. These rules say that (1) solitary confinement longer than 15 days should be prohibited by every nation, and (2) Solitary confinement should only be used in exceptional cases as a last resort for as short a time as possible;

- Long term placement of AICs in ODOC's disciplinary segregation units results in serious prejudice to the public interest; and

- On January 1, 2023 ODOC reduced the maximum presumptive sanction for the most severe rule violations to 60 days.

### III. Due Process Violations

To show that specific procedural due process violations occurred, Plaintiff contends:

### A. Denial of Witnesses

- Plaintiff submitted a timely request for 20 witnesses in a manner consistent with ODOC disciplinary procedures;

- Foss did not make findings as to why she denied Plaintiff's request for witnesses except to make vague statements such as "I'm not talking to other AICs because I have plenty of staff to talk to."; and

- The questions requested by Plaintiff show how some or all of these witnesses could have provided information that constituted a defense to the charges.

**B.  Denial of Meaningful Opportunity to be Heard**

- Foss withheld information as confidential that she considered during the disciplinary hearing.  She refused Plaintiff's request that she provide even a summary of this information.  Foss did not provide reasons for doing so;

- Defendant Foss denied Plaintiff access to his legal arguments and documentary evidence during the August 10 and 31, 2021 disciplinary hearings.  He was handcuffed behind his back and locked in a cage.  A guard placed an envelope containing his documentary evidence and legal arguments on a desk outside the cage where Plaintiff had no ability to access them;

- Notice that each of these actions by Foss violated clearly established law was enhanced by the fact that they were also prohibited by the rules of procedure promulgated by ODOC in OAR Chapter 291, Division 105, for the hearing she was conducting;

- Plaintiff requested to be allowed to take a polygraph examination at his own expense.  Foss said that she denied this request because a polygraph was prohibited by ODOC policy.  There was no policy against allowing a prisoner to take a polygraph;

- Foss denied Plaintiff a neutral and detached decisionmaker by adding to and changing each of the charged violations for which she found Plaintiff guilty.

**C. Nofziger, Highberger and Prins adopted the Due Process Violations**

- Defendant Melissa Nofziger had a duty to ensure that the misconduct report submitted to her by Plante was accurate, appropriate, and supported by sufficient information;

- Nofziger condoned and ratified deficiencies in the report;

- Defendants Highberger and Prins had the authority to dismiss or amend the disciplinary order or instruct Foss to reopen the hearing; and

- Highberger and Prins condoned the disciplinary process used by Foss by declining to do so.

## CONCLUSION

The foregoing summary provides an overview of the arguments and facts presented in the Motion for Partial Summary Judgment that Plaintiff plans to file. This overview demonstrates that the number and complexity of issues presented by Plaintiff's motion, and the detail necessary to effectively present these issues explain the need for leave to file a motion 194 pages in length.

DATED, and respectfully submitted this first day of June, 2023 by:

Benjamin Haile, OSB # 04066

bhaile@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97209
Ofc: 503-944-2270
Cell : 503-317-5553
Of Attorneys for the Plaintiff